Edgar **NEUFELD,**
**Appellant/Cross–Appellee,**

v.

**SEARLE LABORATORIES,**
**Appellee/Cross–Appellant.**

Nos. 88–1711, 88–1772.

United States Court of Appeals,
Eighth Circuit.

April 12, 1989.
Decided Aug. 29, 1989.

Dennis E. Egan, Kansas City, Mo., for appellant/cross-appellee.

Andrew See, Kansas City, Mo., for appellee/cross-appellant.

Before ARNOLD, FAGG, and WOLLMAN, Circuit Judges.

ARNOLD, Circuit Judge.

A jury found that Searle Laboratories had willfully violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq., when it fired Edgar Neufeld from his job as a pharmaceutical salesman. After the verdict, the District Court granted Searle's motion for judgment n.o.v. on the issue of willfulness, denied Neufeld's motion for reinstatement or front pay, reduced the back-pay award by a remittitur, and denied Neufeld's motions for costs and expenses. Neufeld appeals these rulings, and we reverse and remand for reinstatement of the original verdict (except for the remittitur, which we uphold) and an award of appropriate equitable relief. For the same reasons, we reject Searle's argument on cross-appeal that the District Court should have granted its motion for judgment n.o.v. on Neufeld's underlying discrimination claim, and we affirm the District Court on this issue. We reverse the District Court's denial of Neufeld's motion for expenses, and we dismiss Neufeld's appeal to the extent that it concerns costs properly so called.

I.

We summarize the evidence presented at trial in the light most favorable to Neufeld's claim.

Edgar Neufeld was fired from his job selling pharmaceuticals for Searle on February 7, 1984, with the termination becoming effective on April 15, 1984. At the time he was fired, Neufeld was fifty-two years old, and he had worked for Searle for over seventeen years. According to Neufeld's service letter, a document required by Missouri law to state the reasons for a discharge, Searle fired him for poor sales performance. Although the service letter identified Neufeld's performance since 1980 as unsatisfactory, Neufeld produced several letters, prizes, and commendations for his work through 1983. The supervisor who fired Neufeld, Ed Kill, contradicted the service letter's representation that Neufeld's sales had been satisfactory from 1966 through 1980. Kill testified at trial that Neufeld had been performing below standard "most of the time" for the duration of his career. Tr. 1080.

Searle claimed that it assessed its agents' sales performance by means of a Drug Data Distribution (D.D.D.) system, administered by an independent marketing consultant, in which doctors' prescriptions of Searle drugs are tabulated and attributed back to the various sales agents. Beginning in 1982, the D.D.D. tabulations included an error in the sales of the drug Calan which adversely distorted Neufeld's performance rating. Ed Kill was aware of this error, and wrote in an internal Searle memorandum dated January 13, 1984, that the 1982 error "does have a very material effect on [Neufeld's] figures," and that "[t]his error could possibly have even cost him on Bonus and Salary if indeed it is as serious at this level as it would appear to be." Pl.Ex. 66. Despite Kill's statement in this memorandum that "*MY* [Kill's] confidence in D.D.D. is also slipping as a result of the[se] difficulties," Kill terminated Neufeld on the basis of his low D.D.D. ratings less than a month later. At trial, Kill claimed to have made a mental adjustment for the Calan error, but admitted that he did not know what Neufeld's corrected statistics would have been. Tr. 728. Kill also testified that he expected Neufeld to perform at a 100 average D.D.D. rating, a sales level which only one of the six sales agents in Neufeld's district had achieved at the time of Neufeld's firing. Tr. 729–30.

At the time Neufeld was fired, he was the oldest sales agent in the district. After he was fired, Ed Kill replaced him with a twenty-seven-year-old sales agent, and the next five sales agents Searle hired in this district were all between the ages of twenty-three and thirty-six. Tr. 686–87.

In December 1978, Ed Kill had written Neufeld a letter expressing the belief that "[s]ometimes representatives of your tenure are a bit inclined to rest on their laurels." Tr. 689. At trial, Kill confirmed that he continued to hold this belief. Tr. 690. Sales agent Ed Franklin testified that Kill had told him that younger sales agents were "more productive, more aggressive." Tr. 740. Kill also repeatedly compared the

performance of Searle's Indianapolis district, which was staffed by a younger sales force, to that of the Kansas City district. At sales meetings in 1983, Kill told Neufeld and other older sales agents that "[t]hese young guys [in Indianapolis] are kicking your ass." Tr. 248, 251–52. According to sales agent Jack Ellis, Kill had told Ellis after 1983 that he had "always stood by the experienced rep," but that he was "not sure this is the view of everybody at Searle." Tr. 761–62. Within two months of Neufeld's termination, Kill told Ellis with reference to possible changes in personnel that "I think we may have to have a sacrificial lamb." Tr. 763. After Neufeld was fired, but before his termination date, he attended a district sales meeting in March 1984, at which Kill repeated his favorable comparison of the Indianapolis sales office's performance to that of his district. Kill said that the Indianapolis district sales force were the "rising stars ... doing all the right things." Tr. 335. In particular, Kill said that the Indianapolis district manager had "gotten rid of the older people ... [and] had hired younger people," and that "this is what [Kill] was trying to do with this district." Tr. 336. According to Jack Ellis, Kill commented that "one way of looking at it, you get rid of the old guys, put in the new people, the figures change." Tr. 764.

The jury returned a general verdict for Neufeld. Following the general verdict, the District Court submitted the following special interrogatories,[1] and received the following responses:

1) Do you believe that plaintiff was performing his job in a manner satisfactory to defendant when the decision was made to discharge plaintiff?

Answer—No

2) If your answer to Question No. 1 was "No," do you believe that unsatisfactory performance was the only reason plaintiff was discharged?

Answer—No

3) If your answer to Question No. 2 was "No," do you believe that plaintiff would not have been discharged except for the motive of defendant to discriminate against plaintiff because of his age?

Answer—Yes

The jury determined Neufeld's damages at $20,000. At trial, the parties agreed that Neufeld's loss of salary after his termination from Searle and acceptance of a lower-paying position at another firm totalled $15,274.18. Neufeld also presented evidence that he had lost seven weeks of vacation benefits over the three years between termination and trial, valued at a total of $4,459.21. After trial, the District Court granted Searle's motion for remittitur of the verdict from $20,000 to $15,274.18 on the ground that the Court had specifically instructed the jury not to compensate Neufeld for any amount lost "in bonus or fringe benefits such as health insurance, dental insurance, life insurance, stock options, pension benefits and the use of a company car." Instruction No. 9. Neufeld had objected to this instruction, but in doing so had not mentioned vacation benefits, and the District Court held that any claim based on loss of vacation benefits had therefore been waived.

The jury also found that Searle's conduct was "willful" within the meaning of the ADEA, 29 U.S.C. § 626(b), a conclusion which would have entitled Neufeld to liquidated damages. The District Court granted Searle's motion for judgment n.o.v. on this issue. The District Court also denied Neufeld reinstatement or front pay without a hearing, ruling that the evidence at trial established that Neufeld would have been terminated prior to trial even in the absence of a discriminatory motive. The District Court also denied Neufeld's motion for certain costs and expenses.

1. We do not understand why the District Court resubmitted the case to the jury in this manner. Special interrogatories may be appropriate in lieu of or in conjunction with instructions for a general verdict, but once the jury has returned an unambiguous answer, there is no reason to ask the same question a second time in a different form. In this case, of course, the jury's responses to the interrogatories were entirely consistent with the general verdict, and so the District Court's unnecessary repetition of the process does not create an issue on appeal.

## II.

In its cross-appeal, Searle claims that the District Court improperly denied its motion for judgment n.o.v. on the issue of Searle's liability. Searle argues first that Neufeld bears the initial burden of proving that he was performing at a level that met his employer's legitimate expectations, citing *Clements v. General Accident Ins. Co.*, 821 F.2d 489, 491 (8th Cir.1987). Searle reasons that because the jury specifically found in Interrogatory No. 1 that Neufeld's job performance was not satisfactory to Searle at the time of his termination, further analysis is unnecessary, and Searle is entitled to judgment as a matter of law.

Searle's argument ignores the jury's response to Interrogatory No. 3, in which it found that Neufeld would not have been discharged except for Searle's discriminatory motive. In effect, the jury's answer to Interrogatory No. 3 robs its finding in Interrogatory No. 1 of any further significance in deciding whether Searle violated the ADEA. Searle was undoubtedly dissatisfied with Neufeld's work—in fact, Ed Kill testified that Neufeld's work had been below average "most of the time" for over seventeen years. Tr. 1080. Indeed, Searle was dissatisfied with the work of most of its Kansas City area salesmen, in that only one of the six had achieved the 100 D.D.D. rating which Kill identified as a "minimum expectation" for Searle agents. Tr. 730. This dissatisfaction makes no legal difference where the employer continues to retain the unsatisfactory employee. In the exercise of its business judgment, Searle is free to make its requirements for job performance as demanding as it chooses, and it may fire an employee for unsatisfactory performance or any other reason so long as that reason is not proscribed by law. It may not, however, fire an employee like Neufeld because of his age, and then argue that his substandard work record disqualifies him from the protection of federal anti-discrimination law.

This is so because the law protects all older employees, including those of average and below-average ability, from being treated more harshly than they would have been if they were young. *Cf. Riordan v. Kempiners*, 831 F.2d 690, 697–98 (7th Cir.1987). A worker's poor performance does not become a separate defense under the ADEA if the jury does not believe that the worker's inadequacy was the reason he was fired. In this context, the requirement that a discriminatory-discharge plaintiff show that he met his employer's legitimate expectations, see *e.g., Clements, supra; Bell v. Gas Service Co.*, 778 F.2d 512, 515 (8th Cir.1985), simply announces the plaintiff's burden of proving that he would have been retained in the absence of unlawful bias. Although Searle was not satisfied with Neufeld's performance, the jury found that he would nonetheless have kept his job if he had been a younger man.

The remaining question is simply whether a reasonable jury could have reached this conclusion from the evidence at trial. In reviewing the record under the standards articulated in *Gilkerson v. Toastmaster, Inc.*, 770 F.2d 133, 136 (8th Cir.1985), we have little trouble affirming the District Court's denial of Searle's motion for judgment n.o.v. on the issue of liability. Ed Kill's repeated approval of the Indianapolis district's apparent policy of systematic age discrimination alone provides ample direct evidence that Searle fired Neufeld for an unlawful reason. Similarly, a jury could reasonably infer from a memo expressing a lack of confidence in the D.D.D. ratings that Searle's claim that it fired Neufeld for his poor D.D.D. performance was pretextual.

Searle vigorously argues that the jury's verdict was a product of sympathy, in that Kill's age-conscious statements are correctly interpreted in context only as exhortations to work harder, or as statements of fact. Searle had the chance to argue these alternate interpretations to the jury. We cannot overturn the jury's harsher and equally plausible interpretation of Kill's statements merely because its view of this evidence was unsympathetic to Searle.

Searle further argues that Kill's sales talk in March 1984, in which he made the most damaging age-related statements in evidence, is irrelevant in that Kill had already terminated Neufeld at the time these statements were made. This argument confuses relevance with causality. Kill's remarks could not have had any causal effect on the earlier decision to fire Neufeld, but what Kill said in March is certainly a good indication of what was on his mind in February.

Finally, Searle protests that the jury was unjustifiably allowed to second-guess its business judgment predicated on the objective performance index of the D.D.D. It is true that the courts have no business telling Searle how to make personnel decisions, which may be objectively or subjectively based. However, it is the essence of the fact-finder's duty in an age-discrimination case to decide whether the employer's proffered reason for discharge was its actual motivation. An employer cannot use the "objective" nature of its proffered criteria for personnel decisions to insulate itself from skeptical inquiry by the trier of fact.

### III.

The District Court granted Searle's motion for judgment n.o.v. on the issue of willfulness, stating that it was "unable to find any evidence that would permit a reasonable jury to conclude that Searle knew it was violating the ADEA when it terminated Neufeld." *Neufeld v. Searle Laboratories*, No. 84–0932–CV–W–9, slip op. at 6, 1987 WL 19226 (W.D.Mo., Oct. 16, 1987). Taken purely as a ruling on a motion for judgment n.o.v., this conclusion is surprising, given the substantial evidence of deliberate and systematic age discrimination presented at trial. Searle's judgment n.o.v. motion does, however, present a recurring dilemma in cases involving liquidated damages under the ADEA which requires some discussion. The problem is this: how do courts meaningfully define a willful act of intentional discrimination so that "willfulness" and "discriminatory motive" are not redundant terms? In *Trans World Air-lines v. Thurston*, 469 U.S. 111, 127–28, 105 S.Ct. 613, 624–25, 83 L.Ed.2d 523 (1985), the Supreme Court held that an employer's mere knowledge that the ADEA might apply could not suffice to show that its violation was willful. Since the law requires employers to post ADEA notices, every ADEA violation would qualify as willful—thus destroying the ADEA's two-tiered liability scheme—unless more were required of plaintiffs claiming liquidated damages. *Id.*

*Thurston* was a disparate-impact case, in which an airline was held liable for implementing a transfer policy which adversely affected older pilots, despite the airline's "reasonabl[e]" and "good faith" attempts to ensure compliance with the ADEA. *Id.* at 12C, 105 S.Ct. at 625. The chief difficulty in transposing *Thurston* into the disparate-treatment context is that disparate-treatment claims involve charges of specific bias focused against a particular victim. In these cases, it is harder to distinguish between simple and willful discrimination, since a violator's motive in discriminating against a specific person is less easily explained as inadvertence or mistake than it might be in a disparate-impact context.

We do not feel called upon in this case to produce an all-purpose formula for the application of *Thurston* in disparate-treatment cases. We think *Thurston* means at least this: if the people making the employment decision know that age discrimination is unlawful, and if there is direct evidence—more than just an inference from, say, an arguably pretextual justification—of age-based animus, the trier of fact may properly find willfulness.

We therefore turn to the evidence supporting the jury's finding of willfulness. Ed Kill candidly told his district sales meeting in March 1984 that the Indianapolis district manager had gotten rid of the older people and replaced them with younger people, and that Kill was trying to do the same thing in his district. Less than two months before firing Neufeld, Kill told Jack Ellis that although he supported the experienced sales agent, he was not sure

that upper management shared this view. Kill later told Ellis that his Kansas City district might have to have a sacrificial lamb. Applying the standards for review of judgments n.o.v. in *Gilkerson, supra,* we must assume the jury inferred from this evidence that Kill was consciously implementing the policy, used in Indianapolis, of selecting older sales agents for termination on the basis of their age and replacing them with younger hires. The jury might also have reasonably inferred that Kill felt upper management expected this kind of age-purge to occur, and that Neufeld was the sacrificial lamb to whom Kill referred. Furthermore, Kill acknowledged that he knew the ADEA prohibited discrimination on the basis of age against employees over forty, Tr. 678–80. In sum, the jury could reasonably find that Kill knew that he was discriminating against Neufeld on the basis of age, that federal law prohibited such discrimination, and that Kill nonetheless violated the law willfully.

We must therefore reverse the District Court's order of judgment n.o.v. on the issue of willfulness, and reinstate the jury's verdict for Neufeld. *Cf. Clements,* 821 F.2d at 492.[2]

IV.

■ In denying Neufeld's motion for equitable relief, the District Court relied on the jury's finding that Neufeld's job performance was not satisfactory, together with the Court's own conviction based on the evidence that Neufeld would have been terminated before trial for lawful reasons. *Neufeld v. Searle Laboratories,* No. 84–0932–CV–W–9 (W.D.Mo. Oct. 16, 1987). As we have explained, the jury's additional finding that Neufeld would not have been terminated except for Searle's discriminatory motive deprives its finding that Neufeld was an unsatisfactory worker of any further legal significance. The District Court was not free to reject the jury's conclusion that Neufeld would not have been fired except for his age. See *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1101 (8th Cir.

1982). Nor can the Court's action be upheld on the theory that Neufeld's discharge, though unlawful when it occurred, would have happened anyway, and legitimately, at some later time, but before the case went to trial. The jury's verdict, which awarded back pay up to the day of the verdict, necessarily establishes that age discrimination was the legal cause of Neufeld's being without his job with Searle from the date of his discharge at least up through the date of the verdict. The Court was not free to reject this finding of fact.

■ On remand, the District Court should conduct a hearing on Neufeld's claim for equitable relief. The Court should presume that Neufeld would have continued to work for Searle until retirement age, unless Searle provides evidence to the contrary. See *MacDissi v. Valmont Industries,* 856 F.2d 1054, 1060 (8th Cir. 1988). This evidence will not rebut the presumption of continued employment if it merely restates Searle's position at trial that Neufeld was an unsatisfactory worker. The jury has already considered this evidence—including Kill's claim that Neufeld had been below average most of the time for his entire career—and has concluded that a younger, equally unsatisfactory worker would not have been fired. In order to avoid an award of reinstatement or front pay, Searle must prove that some new development—such as a reduction in the sales force or termination of operations—would have ended Neufeld's employment.

V.

The District Court also ordered a remittitur of Neufeld's damages from the jury's base award of $20,000 to $15,274.18, the precise amount of Neufeld's loss in back pay (less interim earnings). The District Court had specifically instructed the jury not to compensate Neufeld for any loss "in bonus or fringe benefits such as health insurance, dental insurance, life insurance, stock options, pension benefits and the use

---

2. On remand, the Court should reconsider its award of prejudgment interest. The plaintiff may not be entitled to both prejudgment interest and liquidated damages.

of a company car," Instruction No. 9, on the ground that Neufeld had not proved any such damages.

Neufeld argues that his loss of vacation benefits justifies the jury's award beyond his loss of back pay, and points to testimony establishing the loss of seven weeks of vacation between termination and trial. The District Court rejected this argument, on the ground that Neufeld did not challenge Instruction No. 9 on this basis. We agree. Neufeld objected to Instruction No. 9, but only on precise grounds that made no reference to vacation pay. He is precluded from attacking the instruction in this Court on a basis that was clearly not urged below. The plaintiff did properly preserve his claim that he would have received bonuses had he not been fired, but the District Court held, and we agree, that the existence or amount of any such future bonuses are, on this record, merely speculative.

### VI.

Finally, Neufeld appeals the District Court's denial of $3,017.55 in court costs and $2,004.06 in out-of-pocket expenses. Neufeld requested that the Court award $3,107.55 in costs for witness fees, filing fees, and costs for deposition transcripts under 28 U.S.C. § 1920. The District Court denied this request on the ground that Neufeld should have submitted his bill of costs to the Clerk of the District Court under Fed.R.Civ.P. 54(d). Neufeld represents that he has subsequently filed his bill of costs with the Clerk, but does not allege that the Clerk has acted on Neufeld's bill, or that the District Court has reviewed such an action. As far as we know, therefore, no final order with respect to costs has been entered, and the issue is not ripe for review. See *Newton v. Consolidated Gas Co.*, 265 U.S. 78, 83, 44 S.Ct. 481, 483, 68 L.Ed. 909 (1924), describing the narrow circumstances in which determinations as to costs are subject to appellate review.

The District Court further denied Neufeld's motion for expenses relating to trips that Neufeld's attorneys took to Florida and Illinois to take depositions. The District Court ruled that "[e]ven if an award of reasonable expenses may be made under the ADEA, plaintiff has not explained why the expenses listed ... were reasonably necessary for the preparation of this case." *Neufeld v. Searle Laboratories*, No. 84–0932–CV–W–9, slip op. 1, 1988 WL 11640 (W.D.Mo. Feb. 5, 1988). On appeal, Neufeld argues that out-of-pocket expenses may be awarded under the ADEA. Reasonable expenses, the sort that lawyers ordinarily include in their bills to clients, are recoverable as part of the reasonable attorneys' fee ordinarily awarded to prevailing plaintiffs in ADEA cases. *Cf. Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 30 (D.C.Cir.1984), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985) (authority granted by 42 U.S.C. § 1988 to award a "reasonable attorney's fee" in civil-rights case includes reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client); *Northcross v. Board of Educ. of Memphis City Schools*, 611 F.2d 624, 639 (6th Cir.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980) (same). Here, the depositions in question were of material witnesses, and the expense of taking them is clearly the sort of thing that routinely and properly shows up on a lawyer's bill. It was an abuse of discretion not to award this amount of $2,004.06 as part of the fee award to this prevailing plaintiff. On remand, this amount should be included in the judgment.

In conclusion, the denial of Searle's motion for judgment n.o.v. on the issue of liability and the grant of a remittitur are affirmed. To the extent that the appeal concerns the $3,017.55 claimed by Neufeld as court costs, it is dismissed. The denial of equitable relief, the grant of Searle's motion for judgment n.o.v. on the issue of liquidated damages for willfulness, and the denial of $2,004.06 in reasonable expenses, are all reversed. The cause is remanded to the District Court for further proceedings consistent with this opinion.

It is so ordered.