Mildred **DANIELSON**,
Plaintiff–Appellant,

v.

**CITY OF LORAIN**, Defendant–Appellee.

No. 90–3666.

United States Court of Appeals,
Sixth Circuit.

Argued May 9, 1991.

Decided July 16, 1991.

682

Robert A. Dixon (argued), Mase, Mergenthaler & Slominski, Cleveland, Ohio, for plaintiff-appellant.

Mark J. Mihok (argued), Lorain, Ohio, for defendant-appellee.

Before KEITH and BOGGS, Circuit Judges, and BERTELSMAN, District Judge.*

KEITH, Circuit Judge:

Plaintiff Mildred Danielson ("Danielson") appeals from the June 20, 1990, order entering a directed verdict for defendant City of Lorain (the "City") in this suit alleging age discrimination. For the following reasons, we AFFIRM.

## I.

Danielson was first employed by the City on September 20, 1976, at the age of fifty-seven. She was initially hired as a clerk-typist and on August 13, 1979, she was appointed to the position of secretary in the Fire Department. She held this position until May 25, 1984, when she was laid off as part of a city-wide reduction in work force. Approximately eight months later, she requested assignment to a vacant position in the Utilities Department.

Danielson was interviewed by the service director, Richard Koba ("Koba"), and in January 1985 was recalled from layoff to fill the position of clerk-cashier in the Utilities Department. She was sixty-five years of age when she was recalled to this position. Shortly after she started the job, she was told by her Department Manager, Arthur DeAngelis ("DeAngelis"), that she

"would never make it" on the job. Transcript at 18 (Testimony of Danielson).

In November 1985, after returning from sick leave, Danielson was called into the office of the utility director, John Rybarczyk ("Rybarczyk"). The only other person at the meeting was DeAngelis. Danielson alleges that at this meeting Rybarczyk told her that, because of her age, she should consider retirement. He pointed out to her that there were things that he could not do anymore because of his age, giving painting his house as an example. Danielson alleges that DeAngelis was in agreement with Rybarczyk's comments. *Id.* at 21–22. She made notations of these comments on the back of a paycheck stub after the meeting. *Id.* at 29; Joint Appendix at 18. Rybarczyk denied Danielson's accusation at trial, stating, "To my knowledge, sir, there was nothing said about age at any meeting." Transcript at 312 (Testimony of Rybarczyk).

In July 1986, Danielson was given a two-week disciplinary suspension after one verbal and two written reprimands for alleged poor work performance. *Id.* at 19–20; Joint Appendix at 31–32. The verbal reprimand was on September 6, 1985, and the first written reprimand was on October 4, 1985. These reprimands were, therefore, before the November 1985 meeting at which the alleged discriminatory statement was made. The second written reprimand was dated April 4, 1986. Joint Appendix at 28–30.

On November 25, 1986, Danielson was terminated by the City. The decision was made by Koba based upon the information and recommendation provided by Rybarczyk, which included reports from DeAngelis and Alery Turcus ("Turcus"), Danielson's immediate supervisor, as well as testimony of employees at her discharge hearing. Transcript at 105–06, 116–17 (Testimony of Koba). Turcus had written numerous memoranda to DeAngelis concerning Danielson's poor work quality. Joint Appendix at 20–21, 33–37, 40, 42, 45–46.

* The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Danielson testified that she could not conclude that age was a factor in Turcus' treatment of her. Transcript at 40–41 (Testimony of Danielson). All levels of supervisory personnel complained of her inability to grasp job requirements despite training and counselling. Joint Appendix at 19–50. DeAngelis received written complaints from other office personnel. *Id.* at 241–47 (Testimony of DeAngelis). She had been reprimanded previously and then suspended.

On November 30, 1988, Danielson filed this suit alleging that she was terminated on the basis of her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634. On June 18, 1990, a jury trial was commenced. The City stipulated that Danielson was replaced by a younger person outside of the protected age group. The district court reserved ruling on defendant's Motion for Directed Verdict presented at the close of Danielson's case. On June 20, 1990, after the close of the City's case, the district court granted the motion in favor of the City. Danielson filed a timely notice of appeal on July 19, 1990.

## II.

### A.

Our standard of review of motions for directed verdict is identical to the standard used by the district court. *King v. Love,* 766 F.2d 962, 969 (6th Cir.), *cert. denied,* 474 U.S. 971, 106 S.Ct. 351, 88 L.Ed.2d 320 (1985). We must view the evidence in a light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences. *Kitchen v. Chippewa Valley Schools,* 825 F.2d 1004, 1015 (6th Cir.1987). The motion should be granted if there are "no controverted issues of fact upon which reasonable [people] could differ." *Id.*

■ We have held that we generally apply to ADEA age discrimination cases the same analysis applied to discrimination cases under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. according to *McDonnel Douglas Corp. v.*

*Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Chappell v. GTE Prods. Corp.,* 803 F.2d 261, 265 (6th Cir. 1986). Under this analysis, plaintiff must first establish a prima facie case. The prima facie case creates a presumption of discrimination, which requires the defendant to articulate a legitimate, nondiscriminatory reasons for the dismissal. It is then the plaintiff's burden to establish that discrimination was a determinative factor in the dismissal. *Id.* at 265. In an ADEA suit, a prima facie case is established if the plaintiff shows that he or she is a member of the protected age group, that the plaintiff was discharged, that the plaintiff was qualified for that position (or that he or she was doing the job well enough to meet the employer's legitimate expectations), and that the plaintiff was replaced by a younger person. *Id.* at 265–66. The district court accepted arguendo that Danielson had made out a prima facie case. Transcript at 325.

### B.

■ The district court found, and we also conclude, that the City articulated a legitimate, nondiscriminatory reason for dismissing her—poor work performance. Once the City articulated a legitimate nondiscriminatory reason, the burden shifted back to Danielson to prove by a preponderance of the evidence that the reason articulated was a pretext for intentional age discrimination. *See Chappell,* 803 F.2d at 265.

Danielson argues that the evidence of the City's articulated reason of poor work quality was attacked sufficiently so that a reasonable finder of fact could have rejected it and found in her favor. To support her claim, Danielson testified that Rybarczyk suggested she retire because of her age. Danielson also sought to establish doubt over whether all of the mistakes attributed to her poor work performance were the result of her work and not the mistakes of others. Danielson argues that a reasonable fact finder could have determined that Rybarczyk decided that Danielson, because of her age, should retire and

that when she refused, with age as a determinative factor, he began creating a paper trail to establish inadequate work to achieve his desired result. Appellant's Brief at 10–11.

█ If the scenario Danielson proffers accurately described the events leading to Danielson's dismissal, she would be entitled to judgment no matter how inadequate her work performance was. *See Neufeld v. Searle Laboratories*, 884 F.2d 335, 339 (8th Cir.1989). The ADEA establishes that age may not be a determinative factor in a dismissal of a member of the protected age group no matter how poorly a worker performed. However, if a plaintiff is not able to establish that she performed the job at a level which met the employer's legitimate expectations or that the accusation of poor work was only a pretext, the claim for discrimination cannot be successful. *Id.; Chappell*, 803 F.2d at 266.[1] Workers who poorly perform their jobs will not be insulated from dismissal simply because they are members of the protected age group.

### C.

We find that a reasonable fact finder could not determine, based on the factual record established in this case, that poor work performance was merely a pretext for a dismissal that was based on Danielson's age. Speaking of the numerous errors attributed to Danielson in contemporaneous memoranda, the district court stated, "There is no evidence whatever that those mistakes are someone else's mistakes, or that there was any error made by the employees and supervisors who reported those mistakes." Transcript at 326. Our review of the record confirms this conclusion. Danielson admitted making mistakes, but claimed that she made no more than other employees. *Id.* at 61. Several other employees reported that Danielson made numerous errors. Danielson did not show that the mistakes attributed to her were made by others. She only showed that the

procedures used in Danielson's office were such that it was possible, but not likely, that the errors were created by someone else. She completely failed to meet her burden of proof in showing, by a preponderance of the evidence, that her poor work performance was merely a pretextual reason for her dismissal.

There is strong evidence that Danielson's work was indeed substandard. An early performance review for the period ending June 30, 1985, and completed in October 1985 described Danielson as satisfactory in most areas, but needing improvement in seven of twenty areas, including accuracy in work. Joint Appendix at 14. That review was completed more than a month before the meeting in which Rybarczyk allegedly made an age-based comment and which allegedly precipitated the plan to establish a pretextual paper record. Subsequent evaluations described her work as below satisfactory in virtually all areas. *Id.* at 15–16.

There is no evidence that Koba, who dismissed Danielson, harbored any age-based animus. Danielson was fired by the same person, Koba, who hired her at the age of sixty-five, only two years before her dismissal at age sixty-seven. It is true Koba dismissed her based on the recommendation and file prepared by Rybarczyk, but the file included letters of complaint by other supervisors about whom Danielson testified she had no evidence they treated her differently because of her age. She merely surmised that since she felt she did not make many mistakes, age discrimination could be the only reason supervisors complained. Transcript at 63–64 (Testimony of Danielson).

We assume for the purpose of this appeal that the fact finder would credit Danielson's allegation that Rybarczyk said he thought she should consider retiring because of her age. Even though such a statement is strong evidence of an illegitimate motive, the record clearly establishes

---

**1.** As the Eighth Circuit noted in *Neufeld*, "In this context, the requirement that a discriminatory-discharge plaintiff show that he [or she] met his employer's legitimate expectations simply an-

nounces the plaintiff's burden of proving that he [or she] would have been retained in the absence of unlawful bias." *Neufeld*, 884 F.2d at 339 (citations omitted).

a poor working record that began before the alleged statement and which was documented by several complaining supervisors. The recommendation by Rybarczyk came a year after the alleged discriminatory remark and at least a year and a half after poor work was alleged. Months after the statement, she had been given a disciplinary suspension following a hearing. Danielson never alleged age discrimination in that hearing, despite the alleged comment and her alleged contemporaneous recording of that comment. We conclude that a reasonable fact finder could not find that all of Danielson's supervisors created a false paper trail for the purpose of dismissing her because of her age and waited a year before presenting the fabricated record to Koba, recommending dismissal. We, therefore, conclude that Danielson failed to establish that a reasonable fact finder could have found that poor work performance was merely a pretextual reason for her dismissal and that age was a determinative factor.

### III.

For the foregoing reasons, we AFFIRM the June 20, 1990, order of the Honorable Alice M. Batchelder, United States District Judge for the Northern District of Ohio.