35 F.3d 356
 66 Fair Empl.Prac.Cas. (BNA) 1749, 128
Lab.Cas. P 33,138
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
Plaintiff/Appellee/Cross-Appellant,
and
Sharon Hamblin, Plaintiff-Intervenor/Appellee,
v.
CHERRY-BURRELL CORP., Defendant/Appellant/Cross-Appellee.
 Nos. 93-3475, 93-3647.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 13, 1994.
Decided Sept. 19, 1994.
 
 Kevin James Visser, Cedar Rapids, IA, argued (Larry G. Gutz, on the brief), for appellant.
 Counsel who presented argument on behalf of the appellees were Sophia C. Goodman, Washington, DC, argued, for EEOC.
 Steven A. Stefani, Cedar Rapids, IA, argued for Hamblin.
 James R. Neely, Jr., Gwendolyn Young Reams and Lorraine C. Davis, on the brief, for EEOC.
 Before: R. ARNOLD, Chief Judge; WOLLMAN, Circuit Judge; and WELLFORD*, Senior Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 The Equal Employment Opportunity Commission (hereafter "EEOC") filed suit in 1989 against the defendant, Cherry-Burrell Corporation (hereafter "C-B"), seeking equal pay relief under 29 U.S.C. Sec. 206(d) and a sex discrimination award under Title VII, 42 U.S.C. Sec. 2000e-5 for Sharon Hamblin, a C-B employee. Hamblin was permitted to intervene in early 1990. After trial, the district court awarded $10,180 in back pay under the Equal Pay Act (hereafter "EPA"), limiting the award to a two-year period. This award was based upon the district court's determination that the EPA violation was not "willful" and that liquidated damages were not recoverable.
 
 
 2
 The district court, at the same time, awarded plaintiffs a Title VII "back pay" recovery based upon sex discrimination.[1] Hamblin was discharged in mid-1990.
 
 
 3
 Both sides appeal various aspects of the final judgment of the district court and present a number of issues in their respective appeals over which we have appropriate jurisdiction.
 
 
 4
 We first consider the Title VII award which may well subsume some, or all, of the EPA claims.
 
 
 5
 "[A] plaintiff is not entitled to a separate compensatory damage award under each legal theory. On the contrary, he is entitled only to one compensatory damage award if liability is found on any or all of the theories involved." Greenwood Ranches, Inc. v. Skie Constr. Co., 629 F.2d 518, 521 (8th Cir.1980).
 
 
 6
 Washburn v. Kansas City Life Ins. Co., 831 F.2d 1404, 1410-11 (8th Cir.1987).
 
 I. TITLE VII CLAIMS
 A. Retaliation
 We recite pertinent stipulated facts:
 
 7
 Sharon Hamblin [Hamblin] was employed by Cherry-Burrell [C-B] from September 16, 1974, through June 30, 1990. Hamblin was originally employed as a supply clerk and subsequently became the switchboard operator/receptionist. In January 1976 she became an Expeditor in the Purchasing Department. Hamblin was promoted to the position of Expeditor Coordinator in 1979. She remained in that position until 1982 when she was promoted to Junior Buyer.
 
 
 8
 Since 1967 there have been no Junior Buyers at any of the C-B facilities other than the facility in Cedar Rapids, Iowa, where Hamblin worked. Hamblin was Junior Buyer at C-B from March 1982 to August 1988. The position description for a Buyer at C-B does not require an employee to first work as a Junior Buyer....
 
 
 9
 Prior to 1988 all persons employed as Buyers at C-B were male. Jim Bulicek is the only other person known to have been employed by C-B as a Junior Buyer. He was promoted to Buyer less than one year after becoming a Junior Buyer in 1967.
 
 
 10
 Hamblin applied for the open Buyer's position on March 27, 1984. Albert Hallett was hired by C-B as a Buyer on May 1, 1984....
 
 
 11
 The district court found the following additional facts:
 
 
 12
 On May 1, 1984, Hamblin as the Junior Buyer was performing substantially similar duties to the duties assigned to Buyers. As the only Junior Buyer, she purchased types and lines of products that were assigned to Buyers. She followed the same policies and procedures as the Buyers. She was not required to request supervisory authority to make purchases. Hamblin was fully qualified for the position of Buyer when Hallett was hired.
 
 
 13
 ....
 
 
 14
 Hallett was hired at a starting salary of $24,000 per year. Hallett's salary was greater than Hamblin's salary by $600 per month (or $7200 per year). Hamblin received satisfactory performance reviews throughout her tenure as Junior Buyer.... [There] was ... a pervasive attitude in C-B's officers that women were not as well suited as men to perform management jobs.
 
 
 15
 Hamblin did not apply for the position of Buyer in 1988, yet she received the title of Buyer....
 
 
 16
 Hamblin performed essentially the same work when she was called a "Junior Buyer" as she performed when she received the title "Buyer." Hamblin's duties did not change appreciably when she received the title of Buyer.
 
 
 17
 C-B had no valid basis for placing Hamblin in the position of Junior Buyer rather than Buyer in 1982. In July 1988, C-B hired a male Buyer, Davidson, at a starting salary of $26,500. At that time, Hallett was earning $29,304. Hamblin's starting salary as a Buyer in August of 1988 was $25,008.
 
 
 18
 ....
 
 
 19
 C-B repeatedly ignored its stated criteria for Buyer qualifications; Hallett was hired as Buyer even though he had no subcontracting skills, and Davidson did not possess a college degree.
 
 
 20
 In June 1990, C-B instituted a reduction-in-force, seniority being the major factor in determining who would be laid off. Hamblin was laid off as a result of her lack of seniority in a Buyer position.
 
 
 21
 Until August 1988, Cherry-Burrell refused to promote Hamblin to the position of Buyer because she was female. Hamblin was paid less than a male for similar work.
 
 
 22
 ....
 
 
 23
 The bias and unfair treatment was subconscious, not willful.
 
 
 24
 The district court reached the following conclusions:
 
 
 25
 Hamblin has shown by a preponderance of the evidence that in 1984 she (a) belonged to a protected group--females; (b) was qualified for and applied for the position of Buyer; (c) was considered for but denied the position of Buyer; and (d) was passed over as Buyer when a man, Hallett, was hired....
 
 
 26
 C-B intentionally refused to "promote" Hamblin because of her sex in violation of 42 United States Code section 2000e-2(a)(1).
 
 
 27
 Hamblin has shown by a preponderance of the evidence that as the Junior Buyer in 1984 she performed duties requiring equal skill, effort, and responsibility, under similar working conditions as those of a Buyer, but was paid less for this equal work. C-B's evidence to the contrary was not persuasive....
 
 
 28
 Hamblin has not established that C-B acted willfully. In paying Hamblin less than her male counterparts, C-B did not act in knowing or reckless disregard for whether its conduct violated the Equal Pay Act....
 
 
 29
 Hamblin has established that C-B compensated her at a rate less than that of males doing substantially similar work in violation of Title VII.
 
 
 30
 Hamblin has not established that C-B retaliated against her for filing discrimination charges. Litigation itself provided the impetus for both Hamblin and C-B to monitor and document more closely what was occurring in their employer-employee relationship. Hamblin was paid less than males for equal work....
 
 
 31
 Hamblin was laid off due to a lack of seniority in the Buyer's position; this occurred seven years after Hamblin filed her initial discrimination claim. Lack of seniority is a valid, independent, non-discriminatory justification for the lay-off. The passage of seven years blunts any inference that C-B laid off Hamblin to penalize her for her discrimination charge....
 
 
 32
 [P]laintiffs' proof falls short of demonstrating that C-B intentionally retaliated against her.
 
 
 33
 Hamblin is entitled to back pay, based on her Title VII claims, measured by the salary paid to Hallett from May 1, 1984, to the present.
 
 
 34
 We find no error in the district court's determination that the plaintiffs failed to demonstrate a claim of retaliation under Title VII against C-B.
 
 B. Back Pay
 
 35
 Title 42, U.S.C., Sec. 2000e-5(g) sets out the pertinent provisions about relief to an aggrieved claimant under Title VII:
 
 
 36
 (g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ..., or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.
 
 
 37
 (emphasis added). This court has previously discussed standards applicable to this type of sex discrimination claim which is akin to an unequal pay claim:
 
 
 38
 Where, as here, the plaintiff raises a claim of unequal pay for equal work on the basis of sex, the standards are the same whether the plaintiff proceeds under Title VII or the Equal Pay Act. McKee v. Bi-State Dev. Agency, 801 F.2d 1014, 1019 (8th Cir.1986). The plaintiff must prove that the employer pays different wages to employees of opposite sexes for " 'equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.' " Id. at 1019 (quoting Corning Glass Works v. Brennan, 417 U.S. 188, 195 [94 S.Ct. 2223, 2228, 41 L.Ed.2d 1], ... (1974). We accord great weight to the district court's factual findings and review only for clear error. McKee, 801 F.2d at 1020; Orahood v. Board of Trustees, 645 F.2d 651, 654 (8th Cir.1981); Johnson v. Nordstrom-Larpenteur Agency, Inc., 623 F.2d 1279, 1281 (8th Cir.1980).
 
 
 39
 E.E.O.C. v. Delight Wholesale Co., 973 F.2d 664, 669 (8th Cir.1992).
 
 
 40
 Similar findings were made in Delight Wholesale related to pay disparity to females for substantially similar work and to consequent constructive discharge due to such discrimination. We find no "clear error" in the factual findings of the district court with respect to a determination of discriminatory failure to promote and that Hamblin, fully qualified, performed a job requiring substantially similar duties and responsibilities to make Buyer, but was paid less for such equal work over a period of time, beginning in 1984. We find, in sum, no error in the factual determination of liability of C-B for sex discrimination and back pay to the date of termination under Title VII.
 
 
 41
 Contrary to the defendant's contention, the district court did not find that C-B acted in "good faith;" rather, with respect to the alleged EPA violation, the court found that C-B, in paying less, "did not act in knowing or reckless disregard for whether its conduct violated the EPA." There is a difference between acting in good faith for Title VII purposes and not acting in a knowing and reckless way so as to violate EPA willfully. We are satisfied that finding no willful EPA violation is not necessarily inconsistent with a concurrent finding of an intentional refusal to promote and in intentionally treating Hamblin differently from similar situated males despite her qualifications for Title VII purposes.[2]
 
 
 42
 The first question, then, becomes whether the nature of the so-called "back pay" remedy, plus interest, costs and fees, was appropriate in this case. The district court found Hamblin "entitled to back pay measured by the salary paid to employee Albert Hallett from May 1, 1984, to December 31, 1992." It extended back pay beyond the date of Hamblin's lay-off to what the district court described as an "appropriate ending date." The extension beyond the June 30, 1990 lay-off date occurred because the district court found that Hamblin would not have been laid off in 1990 "had gender played no rule in her employment at C-B." The district court made no "so-called 'front pay' " allowance because its "back pay" award made her "whole" in its view. Hamblin supports the district court's Title VII damages award in her appellate brief, maintaining that it was "proper and consistent with the intent and purpose of Title VII." EEOC does not challenge the amount of the Title VII damages award, but objects to the EPA damages.
 
 
 43
 Title VII mandates a finding of discriminatory intent to support a damages award for lost pay. The "ultimate burden of persuading the [trier of fact] that [she] has been the victim of intentional discrimination" falls upon the plaintiff. St. Mary's Honor Center v. Hicks, --- U.S. ----, ---- - ----, 113 S.Ct. 2742, 2747-48, 125 L.Ed.2d 407 (1993). See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).
 
 
 44
 The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of a prima facie case, suffice to show intentional discrimination.
 
 
 45
 Hicks, --- U.S. at ----, 113 S.Ct. at 2749.
 
 
 46
 A careful examination of this record, accompanied by the district court's credibility determinations, satisfies this court that the plaintiffs did meet the pertinent Title VII requirements of proof against C-B, that sex "discrimination was the real reason" for failure to promote and to pay Hamblin in the same manner as her male cohorts. Hicks, --- U.S. at ----, 113 S.Ct. at 2749 n. 4. Having concluded that Hamblin established the requisites for Title VII liability for discrimination in pay and promotional opportunity beginning in 1984, we find no error in the district court's determination of damages up to and including the date of termination.
 
 
 47
 The defendant also specifically challenges as erroneous "that portion of the judgment which grants damages to Hamblin for the period after the non-retaliatory discharge." We hold on this record that the district court was not clearly erroneous in finding that Hamblin carried her burden to show that she was qualified for promotion to the Buyer's position in 1984 and that the defendant discriminated by paying Hamblin less in 1984 and years thereafter than males who performed similar work, but had different titles.
 
 C. Post-termination damages
 
 48
 The district court's finding for extending the back pay award beyond the 1990 lay-off of Hamblin is as follows:
 
 
 49
 Hamblin is entitled to back pay measured by the salary paid to employee Albert Hallett from May 1, 1984, to December 31, 1992, the date this court selects as an appropriate ending date based on plaintiff's amended trial Exhibit 69. This recognizes that Hamblin would not have been laid off on June 30, 1990, had gender played no role in her employment at Cherry Burrell. Cf. EEOC v. Delight Wholesale Co., 765 F.Supp. 583 (W.D.Mo.1991), aff'd, 973 F.2d 664, 670 (8th Cir.1992) (voluntary resignation did not toll back pay where motivated by defendant's unfair treatment).
 
 
 50
 The statement that Hamblin would not have been laid off in mid-1990 had "gender played no role" is accompanied by the district court's conclusion that she was "laid off due to a lack of seniority in the Buyer's position," which the district court added "is a valid, independent, non-discriminatory justification for the lay-off." By reason of this latter conclusion, the district court determined that there was no intended retaliation against Hamblin for filing her earlier discrimination claim. The district court proceeded to augment this somewhat inconsistent determination by stating that "[d]efendant did not intend to harm plaintiff but acted willfully in treating her differently than men," yet deeming the action "intentional" for Title VII purposes. (emphasis added).
 
 
 51
 Since C-B reduced its work force in 1990 due to economic circumstances and acted with valid seniority considerations in mind, was the lay off[3] of Hamblin an intentional discriminatory act directed against her by reason of gender?
 
 
 52
 When asked specifically about whether an additional four year period of "Buyer" experience would have "improved Hamblin's chances to not be termination in 1990," C-B's Norton said "that would be speculative but, yes, it probably would have." C-B's responsible officer also testified, without contradiction, that employees with greater seniority than Hamblin were also terminated in the 1990 substantial reduction-in-force. He also testified that Hamblin, unlike others in a comparable position, had not pursued educational opportunities nor did she have the same "level of experience" in all of C-B's lines as other Buyers. Hamblin may have been qualified to be a Buyer, but she may not have been as experienced, knowledgeable and fully competent in all areas of a Buyer's job as others who were male. Performing "similar" duties does not bring about an inference that all Buyers did "identical" work or even that objectively measured, they performed the Buyer's role equally. "Substantial equality" only is required. McKee v. Bi-State Dev. Agency, 801 F.2d 1014, 1019 n. 5 (8th Cir.1986).
 
 
 53
 Our problem in this case is with respect to what appears to be inconsistent findings and conclusions with regard to post-termination damages. The district court made a finding that "unfair treatment" of Hamblin (that is treating her differently than a comparable male employee was treated) constituted "subconscious, not willful," conduct. (emphasis added). We presume that "unfair treatment" pertained to applying seniority considerations in the reduction-in-force in the Buyer position in 1990 without considering Hamblin to have a 1984 seniority date. "Unfair treatment" may have been deemed to consist of not making Hamblin a Buyer in 1984 when Hallett was hired as a Buyer and not paying her the same compensation as Hallett. The district court further concluded that Hamblin performed duties similar to those required of a Buyer in 1984. "Unfair treatment" may also have been the lay-off or termination of Hamblin in the reduction-in-force, because seniority in the Buyer position was a factor, together with other business reasons as contended by C-B. The point is that C-B's actions deemed "unfair" by the district court may also have been deemed to be "discriminatory" under Title VII, and a violation of the latter statute requires a finding of intentional misconduct, not subconscious unlawful action. If C-B's actions were not "willful" with respect to termination, could they have constituted intentional discrimination if the district court also found this very conduct "not intentionally retaliatory?" See Tidwell v. Fort Howard Corp., 989 F.2d 406 (10th Cir.1993); McKee v. Bi-State Development Agency, 801 F.2d 1014 (8th Cir.1986).
 
 
 54
 The district court also noted that during the period in question, Hamblin received the same percentage salary increases as did the male Buyers. There was very little evidence in the record about the circumstances of 1990 lay-off/termination, except the statement attributed to Norton that if Hamblin had a 1984 seniority date as Buyer, it "probably" would have helped her chances vis-a-vis other Buyers. There is evidence that 78 of 225 salaried employees were terminated in 1990.
 
 
 55
 We find the somewhat cryptic determination that C-B "had no valid basis" for not making Hamblin a Buyer in 1982 not supported by the evidence in light of her experience, or lack thereof, skills and education in comparison to the other Buyers at C-B at the time. Hamblin had three years' experience in 1982 as an Expeditor Coordinator, having previously been an Expeditor in the Purchasing Department. Hamblin herself did not assert, until a complaint was filed in December of 1983, that she should be transferred to a position of Buyer. See Investigative Report of Cedar Rapids Civil Rights Commission. The district court did not find the 1983 action by C-B in hiring Ott to be discriminatory. Hamblin acknowledged that she received instructions and had new requirements imposed in 1982 for performing her "new task" as Junior Buyer. She then felt she was "coming along pretty good."
 
 
 56
 In 1982, furthermore, the district court found that C-B had a hiring freeze. In sum, we find an insufficient basis or explanation for the district court's finding that C-B had "no valid basis" for making Hamblin a Junior Buyer in 1982. The district court acknowledged that "purchasing assistance was needed" at C-B in 1982. The district court excluded other proffered evidence about the opportunities afforded women generally during this period at C-B. If the finding of the district court regarding post-termination damages were substantially linked to the finding of "no valid basis" for not making Hamblin a Buyer in 1982, when a hiring freeze was in effect, we are further troubled by the nature of the award of post-termination damages. The district court, moreover, noted that "back pay" should be limited, because of delay in modification, so as not to "unfairly penalize defendant."
 
 
 57
 We recognize that the "district court has broad equitable discretion to fashion back pay awards in order to make the Title VII victim whole,"[4] but in view of our expressed uncertainties and the potentially inconsistent findings about intended discrimination in the lay-off/termination in 1990, we REMAND only this aspect of the damages for further consideration, clarification, or amendment.[5] In other respects, we AFFIRM the finding of Title VII liability of C-B (and the finding of no liability as to retaliation) and the finding of damages up to the date of termination.
 
 III. EPA LIABILITY
 
 58
 In view of our decision on Title VII liability, we find that Hamblin has been fully compensated in damages for any inequality in pay under EPA up to the date of her termination in 1990, with the possible exception of the element of claimed EPA liquidated damages.
 
 
 59
 With respect to liquidated damages, we begin with the finding that in tending to exclude females from managerial jobs and in treating them differently from males, C-B's bias and unfair treatment were "subconscious," not "willful." The district court did not conclude that Hamblin was more qualified than Hallett; rather, it concluded that C-B did not prove that Hallett was more qualified than Hamblin in 1984 when hired. The district court summarized its EPA findings and conclusions by stating that: "[I]n summary, defendant did not violate the Equal Pay Act knowingly or with reckless regard for its provisions...." (emphasis added).
 
 
 60
 This court stated in Delight Wholesale Co. that: "[W]e accord great weight to the district court's factual findings and review only for clear error." Id. at 669. Based on the evidence heard and credibility determinations, the district court, as trier of fact, found no knowing pervasive equal pay violation. In Tidwell v. Fort Howard Corp., 989 F.2d 406 (10th Cir.1993), the court found that even a jury verdict on an EPA claim did not constitute indirect evidence of "intentional discrimination." Id. at 410 (emphasis added).
 
 
 61
 The statute provides for the determination of whether the defendant acted willfully to trigger a possible extension of the statute of limitations from two years to three. It also provides a like determination as to whether liquidated damages should be awarded. 29 U.S.C. Sec. 260. The latter is made expressly a matter for the trial court's discretion. The statute does not expressly provide for any other impact of willfulness or for an affirmative finding of nonwillfulness.
 
 
 62
 Tidwell, 989 F.2d at 411.
 
 
 63
 We find no clear error, nor any abuse of discretion, in the district court's conclusion that the two-year statute applied in this EPA claim. If the defendant did not act knowingly with respect to gender-based inequality of pay, this may be the equivalent of not willful or not "intentional." Tidwell, 989 F.2d at 411. We deem this also to be a proper concept as to the liquidated damages requirement of EPA. The district court, we believe, had an adequate basis for finding, in substance, that C-B had "reasonable grounds for believing" that its actions as to equal pay (as distinguished from promotion) were not a violation of EPA. 29 U.S.C. Sec. 260. The district court concluded that C-B "did not intend to harm plaintiff ... knowing such treatment would constitute a violation of federal law." We concede some difficulty in interpreting the "willful" element in EPA just as this court tried to define this element in an age discrimination case where a jury found for the plaintiff-employee. The court found it necessary to look to evidence presented to the jury of the employer's "actual motive" in the ADEA context. See Neufeld v. Searle Laboratories, 884 F.2d 335, 340 (8th Cir.1989). Neufeld, we believe, may be distinguished in that there was "substantial evidence of deliberate and systematic age discrimination presented at trial." Id. at 340. We believe that here, in the EPA context, the district court was not clearly in error in concluding there was no motivated action nor animus involved in the EPA violation.
 
 
 64
 In the Fair Labor Standards context, which we believe comparable to the Equal Pay Act, this court usually gives "great deference to the trial court's decision concerning a liquidated damages award." Hultgren v. County of Lancaster, 913 F.2d 498, 509-10 (8th Cir.1990) (finding that the employer "had reasonable grounds for believing its position did not violate the FLSA"). The fact that the employer was aware of the existence of the EPA and "its potential applicability" is not enough to show willfulness. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988). Negligent conduct which does not show "reckless disregard for the matter of whether its conduct was prohibited" is not sufficient to establish willfulness. Id. at 133, 108 S.Ct. at 1681.[6]
 
 
 65
 While the district court did not specifically find that C-B acted in good faith on the equal pay issue, we are of the opinion that in this case its findings that there was "no knowing or reckless disregard" demonstrated by C-B in its equal pay violation was sufficient and not clearly erroneous so that liquidated damages are not required.[7]
 
 
 66
 In light of these EPA decisions, the EPA award is subsumed in the Title VII damages.
 
 IV. CONCLUSION
 
 67
 In summary, we AFFIRM the district court on the issue of Title VII liability and on its award of back pay up to the date of lay-off termination of Hamblin. We AFFIRM the district court also with respect to its EPA determination. We REMAND to the district court for further consideration, clarification or amendment of its decision and award of post-termination back pay for the reasons stated.
 
 
 68
 RICHARD S. ARNOLD, Chief Judge, concurring in the judgment in part and dissenting in part:
 
 
 69
 I concur in the result of that portion of the opinion of the Court that affirms the judgment of the District Court. I respectfully dissent, however, from Part I.C of the Court's opinion, having to do with "post-termination damages." I read the District Court's opinion as having found that the plaintiff would not have been laid off in 1990 had she not been previously denied a promotion for a discriminatory reason. Whatever the circumstances may have been in 1990, the plaintiff should have been promoted earlier, and, if she had been, she would not have been laid off, according to the District Court's findings.
 
 
 70
 In my view, these findings are not clearly erroneous. I appreciate that we are not reversing the District Court on this point, but only remanding for further consideration, but, to my way of thinking, this additional process is unnecessary. I would affirm outright the award of "post-termination damages" without further ado.
 
 
 
 *
 THE HONORABLE HARRY W. WELLFORD, Senior Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation
 
 
 [1]
 The back pay award consisted of compensation for May, 1984 through 1992 in the amount of $106,721, plus interest and attorney fees based on the Title VII award
 
 
 [2]
 The district court clarified its findings to indicate that "[d]efendant's managerial employees treated Hamblin differently because she was a woman, knowing that discrimination against her because of her gender was unlawful. Their actions were intentional for purposes of applying Title VII."
 
 
 [3]
 The district court referred to the June 30, 1990 separation as a "lay off;" the responsible C-B official, however, deemed it a termination. He also testified, contrary to an earlier deposition, that "seniority was not the primary criteria [sic]."
 
 
 [4]
 Delight Wholesale Co., 973 F.2d at 669, 670
 
 
 [5]
 We are not certain whether the district court made any determination about mitigation of damages in the post-termination award. Hamblin testified that she found other employment during 1990 or early 1991. It is also not clear as to how, or if, Hamblin's severance pay, if any, was handled in the award of post-termination damages. See Delight Wholesale Co., 973 F.2d at 668
 
 
 [6]
 The court adopted the "knowing or reckless" definition of "willful" adopted in construing a liquidated damages provision of the Age Discrimination Act. See Hazen Paper Co. v. Biggins, --- U.S. ----, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)
 
 
 [7]
 We are mindful that the district court did not admit evidence submitted by C-B of its other female employees. This may well have strengthened C-B's case on the issue of willfulness