John CLEMENTS, Appellant,

v.

GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, Appellee.

No. 86–1625.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 10, 1987.

Decided June 17, 1987.

David O. Danis, St. Louis, Mo., for appellant.

John B. Lewis, Cleveland, Ohio, for appellee.

BOWMAN, Circuit Judge.

John Clements, plaintiff below, appeals from the entry of a judgment notwithstanding the verdict (j.n.o.v.) by the District Court in favor of defendant General Accident Insurance Company (GAICO). 631 F.Supp. 1477. Clements brought suit alleging that his termination from employment at GAICO violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.* The case was submitted to a jury, which found for Clements and awarded him $68,223 in damages for lost salary

and benefits and an additional $68,223 in liquidated damages, based on a finding of willful discrimination on the part of GAICO. *See* 29 U.S.C. § 626(b). Having reviewed the record, we find that Clements presented sufficient evidence to create a jury question on the issue of willful discrimination. Accordingly, we vacate the j.n.o.v., reinstate the jury verdict, and remand the case for further consideration of GAICO's motion for a new trial, which the District Court[1] summarily denied in light of its holding that GAICO was entitled, in the alternative, to a j.n.o.v.

Clements, who was 55 at the time of his termination, was employed as a marketing representative in GAICO's St. Louis branch office from April 22, 1975 until his termination on February 7, 1983. He had held similar positions at other insurance companies prior to that time. As a marketing representative, it was Clements's duty to act as an intermediary between GAICO and the independent insurance agents whom GAICO relied upon to sell its insurance policies. It was his responsibility to cultivate and maintain contacts with independent brokers in order to receive insurance referrals for the company. Upon receiving a referral, GAICO's underwriting department would set a premium on the potential policy. If the customer bought the policy, it would be considered part of the total dollar production of the marketing representative. Total dollar production is a measure of the effectiveness of a marketing representative.

In 1976, Robert Deck was appointed manager of GAICO's St. Louis branch office and, as such, became Clements's direct supervisor. Beginning in 1981, a dispute arose as to the effectiveness of Clements's performance. While Clements's total dollar production rose by 15 percent from 1981 to 1982 (an increase which he compared at trial against the 7 percent produc-

---

1. Clements argues that GAICO is barred from raising this issue because it did not cross-appeal. The advisory notes to the Federal Rules of Civil Procedure are explicit on this point, however, stating:

   The party in whose favor judgment n.o.v. was entered below may, as appellee, besides seek-

   ing to uphold that judgment, also urge on the appellate court that the trial court committed error in conditionally denying the new trial. *The appellee may assert this error in his brief, without taking a cross-appeal.*

   Fed.R.Civ.P. Rule 50(c) advisory committee note (emphasis added).

tion increase in the St. Louis branch office and GAICO's national production increase of 9 percent), Deck's evaluations of Clements suggested that he was doing below average work. At trial, Clements sought to establish that his below average ratings were part of a plan by Deck to create a pretextual reason with which to camouflage Clements's termination on the basis of his age. GAICO, on the other hand, contended that not only was Clements required to meet certain dollar production goals, but also that he was required by company policy to meet specific goals concerning the appointment of new agencies, the sale of policies by each agency, and the balanced sale of various types of policies (property, personal, and commercial). Deck instituted an evaluation system to monitor progress toward these goals. According to Deck, Clements's increasingly negative performance reviews were based upon this "objective" evaluation system, and he was terminated for failure to meet the goals GAICO had established for him.

■ In order to present a case under ADEA sufficient to reach the jury, the plaintiff first must establish a prima facie case of age discrimination. This consists of a showing that: 1) the plaintiff was within the protected age category; 2) the plaintiff's performance met the expectations of the employer; 3) the plaintiff was terminated from the job; and 4) a younger person was hired in his or her place. *Bell v. Gas Service Co.*, 778 F.2d 512, 515 (8th Cir. 1985). Once such a showing has been made, the burden of production shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for the termination. When the defendant has met this burden, the plaintiff must come forward with evidence demonstrating that the nondiscriminatory reason proffered by the defendant is only a pretext for discrimination. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *Bell*, 778 F.2d at 515.[2] In making this ultimate showing, the plaintiff need not

present direct, "smoking-gun" evidence of discrimination, but the plaintiff's evidence must create an inference of age discrimination such that reasonable minds could agree that age discrimination was the "determining factor in his or her discharge." *Tribble v. Westinghouse Electric Corp.*, 669 F.2d 1193, 1196 (8th Cir.1982), *cert. denied*, 460 U.S. 1080, 103 S.Ct. 1767, 76 L.Ed.2d 342 (1983); *see also Dace v. ACF Industries, Inc.*, 722 F.2d 374, 379 (8th Cir.1983), supplemented, 728 F.2d 976 (8th Cir.1984). The burden of proof remains with the plaintiff throughout the trial. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095.

■ In reviewing the ruling of a district court granting a defendant's motion for j.n.o.v., we need not determine whether the plaintiff made out a prima facie case of discrimination; rather, we must determine whether the evidence as a whole was sufficient to create a question for the jury on the issue of whether the plaintiff was terminated on account of his age. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 713–14, 103 S.Ct. 1478, 1480–81, 75 L.Ed.2d 403 (1983). In so doing, we look only to the evidence favoring the nonmoving party. Any evidence produced by the prevailing party must be disregarded. *Dace*, 722 F.2d at 376; *see also Dace*, 728 F.2d 976.

■ In our review, we must: 1) consider the evidence in the light most favorable to Clements, the party for whom the jury found; 2) assume that all conflicts in the evidence were resolved by the jury in favor of Clements; 3) assume as proved all facts which Clements's evidence tends to prove; 4) give Clements the benefit of all favorable inferences which reasonably may be drawn from the facts proved; and 5) affirm the granting of the motion for j.n.o.v. only if reasonable minds could not differ as to the conclusions to be drawn from the evidence. *Gilkerson v. Toastmaster, Inc.*, 770 F.2d 133, 136 (8th Cir.1985). Furthermore, "for an order entering judgment notwithstanding the verdict to be proper, all

---

2. While *Burdine* addressed the issue of gender discrimination in Title VII suits, the same standards have been held to apply to ADEA claims.

*See, e.g., Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 289 (8th Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983).

the evidence must point one way and be susceptible of no reasonable inferences sustaining the position of the nonmoving party." *Id.* Reviewing Clements's evidence under these standards, we conclude that Clements made a submissible case and that the District Court erred in granting GAICO's motion for j.n.o.v.

At trial, Clements presented evidence which, if believed, would tend to establish the following facts. Clements's work was satisfactory, as evidenced by the fact that he led the office in total dollar production in 1982, earning sufficient points in a bonus contest to allow him to take his wife on a trip to the Bahamas following his termination. I Transcript (Tr.) at 42–43. Deck's system of evaluation did not properly reflect this achievement and was designed in 1981 specifically to target Clements, as it was not in use in any other GAICO office. I Tr. at 304. Deck's performance evaluations of Clements's work were inconsistent in that the below average number scores which Clements received were belied by comments next to those scores indicating that Clements's work was at least of average quality. I Tr. at 106–08; Addendum at 9.

Clements testified that his admitted failure to produce a balanced book of business was in large part attributable to the actions of the underwriting department, which permitted only 50 of 350 commercial policies submitted by Clements to be written, and to the noncompetitive pricing by GAICO of certain types of insurance in a fiercely competitive market. Clements's evidence showed that in the year of his termination three other persons (another marketing representative in the office, Deck, and Deck's supervisor) did not meet the goals established for them, yet, Clements alone was terminated.[3]

Finally, Clements produced evidence which if credited by the jury would tend to prove that Deck harassed older employees and explicitly had stated a preference for younger workers. GAICO replaced Clements with a 31–year-old man. Although GAICO had employed three marketing representatives in the protected age group (including Clements) during Deck's tenure as manager of the St. Louis branch, each of those individuals was replaced by a younger man not within the protected group. A witness for Clements testified to conversations in which Deck explicitly had stated that he would prefer to hire younger men to fill certain positions, I Tr. at 136, and that older people performed less competently than younger people on certain tests. I Tr. at 133–36. Clements testified that Deck had refused to consider hiring a man for a company position after learning that the potential applicant was in his fifties, Deck commenting that "he's too much of a heavy for us." I Tr. at 38. While these statements were made several years prior to the termination of Clements and were made in reference to positions other than that of marketing representative, they are nonetheless probative of a general intent or inclination to discriminate. Even if Clements's somewhat equivocal statistical evidence is discounted, the jury reasonably could have found that Deck intended to fill the office with younger employees.

We find Clements's evidence sufficient to create a jury question on the issue of whether the stated reason for his termination—his failure to meet company goals—was in fact a pretext for unlawful discrimination. Based on the evidence, reasonable minds could conclude that Clements's firing was not only prohibited by the ADEA, but was the product of willful discriminatory intent, as defined by the Supreme Court in *Trans World Airlines v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 625–26, 83 L.Ed.2d 523 (1985) (a violation is "willful" under ADEA if "the employer either knew or showed reckless disregard

---

3. GAICO contends that those with whom Clements compares himself were not similarly situated and therefore are improper figures for comparison. *See Smith v. Monsanto Chemical Co.,* 770 F.2d 719, 723 (8th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1273, 89 L.Ed.2d 581 (1986). This contention is without merit. The question is not whether these other individuals were in positions similar to Clements's, but whether the supposedly uniform company policy of terminating individuals who had not met their goals was uniformly applied on a nondiscriminatory basis. *See Ridenour v. Montgomery Ward & Co.,* 786 F.2d 867, 868 (8th Cir.1986) (per curiam).

for the matter of whether its conduct was prohibited by the ADEA.") Accordingly, we vacate the j.n.o.v. and reinstate the jury verdict, which awarded Clements both actual and liquidated damages, in its entirety.

■ In its brief, GAICO has argued that if we vacate the j.n.o.v. (which we now have done) we should remand the case to the District Court for further consideration of GAICO's motion for a new trial. In denying the motion, the District Court stated that "[i]n light of this holding [granting GAICO's motion for j.n.o.v.] it is further ordered that defendant's motion in the alternative for a new trial be and is denied." Record at 218 (Order of April 8, 1986). *See* Fed.R.Civ.P. Rule 50(c).[4] A district court has broad discretion in ruling on a motion for a new trial, *Lowe v. E.I. DuPont de Nemours & Co.*, 802 F.2d 310 (8th Cir. 1986), and in this case it is possible that the District Court would have granted GAICO's motion for a new trial had it not granted GAICO's alternative motion for j.n.o.v. We thus believe GAICO's argument is meritorious, and we remand for further consideration of the motion for a new trial.

In remanding, we express no view as to the merits of GAICO's new trial motion.[5] We also find Clements's motion for attorney fees to have been filed in the District Court in a timely manner. If the motion for new trial is denied, reasonable attorney fees should be awarded. *See* 29 U.S.C. § 626(b); *Brennan v. Ace Hardware Corp.*, 495 F.2d 368, 374 (8th Cir.1974).

In summary, we vacate the j.n.o.v. and reinstate the jury verdict in its entirety. We remand for further consideration of GAICO's motion for a new trial. If the motion for a new trial is denied, the District Court should enter judgment for Clements in accordance with the jury verdict and, in that event, should also award reasonable attorney fees to Clements.

---

**4.** We call to the District Court's attention that its ruling failed to comply with Fed.R.Civ.P. 50(c)(1), which requires that when a motion for j.n.o.v. is granted, "the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying its motion for the new trial." This requirement serves the salutary purpose of permitting the court of appeals to review both the j.n.o.v. ruling and the new trial ruling at the same time, thereby obviating the need for separate appeals. It is therefore of great importance that the district courts comply with this requirement.

**5.** Our decision to vacate the j.n.o.v. is based upon the evidence presented to the jury. As the District Court has not ruled on asserted errors in the admission of evidence raised by GAICO in its motion for new trial, today's decision does not take those asserted errors into consideration. As a result, in deciding that Clements presented sufficient evidence to make a submissible case, and that the District Court erred in granting GAICO's motion for j.n.o.v., we do not make the law of the case with regard to the issues raised by GAICO in its motion for a new trial. Given the present procedural posture of the case, we expressly decline to rule upon the merits of those issues.