Sandra K. ZELEWSKI, Plaintiff,

v.

AMERICAN FEDERAL SAVINGS BANK, AFS Financial Corporation, a Minnesota corporation, and Steven P. Worwa, Defendants.

Civ. No. 4–91–899.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 26, 1993.

Richard Thompson Wylie, Wylie Law Office, Minneapolis, MN, for plaintiff.

Steven Robert Anderson, Andrew E. Martens, Faegre & Benson, Minneapolis, MN, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on defendants' motion for summary judgment. Based on a review of the file, record and proceedings herein, the court grants defendants' motion.

## BACKGROUND

Plaintiff asserts claims of age and sex discrimination under state and federal law based on various allegations concerning the termination of her employment with defendant American Federal Savings Bank (the "bank"). Plaintiff, who is currently 46 years old, began her employment with the bank in 1968 and eventually received the title of Vice President of Administration.

On the advice of her physician, plaintiff decided to decrease her workload as a result of a lung condition.[1] In March, 1988, plaintiff asked the bank to relieve her of all personnel responsibilities. Although the bank granted her request, plaintiff nonetheless continued to receive the same salary and benefits as before.

---

1. Plaintiff has suffered from bronchiectasis, a chronic lung infection, ever since she contracted pneumonia in 1985.

In January 1990, plaintiff asked the bank if she could work only in the afternoons and use accumulated sick leave to pay for the mornings that she would not be working. The bank again granted her request, and plaintiff continued to receive the same salary even though she worked only afternoons.

On May 4, 1990, plaintiff requested a one-year leave of absence for health reasons. In addition to her lung condition, plaintiff had been suffering from depression since 1987, had been on anti-depressants since 1988 and had been suffering from rheumatoid arthritis since 1989. The bank again granted plaintiff's request, combining the maximum disability leave, vacation time, sick leave and personnel leave available to permit the requested leave of absence.[2] Plaintiff began her leave on May 21, 1990.

In July 1990, plaintiff asked the bank to send her copies of all staff memoranda or newsletters, including those that she had missed after beginning her leave. Although the bank informed plaintiff that it would not be practical to send all bank memoranda and other internal correspondence to employees who were not actually in the work place, the bank nonetheless sent its most recent newsletter and employee handbook revisions to plaintiff. The bank subsequently sent plaintiff copies of job postings and newsletters.

Plaintiff's leave ended in May 1991. Plaintiff, however, failed to inform the bank when or if she would be able to . return to work. Although the bank wanted plaintiff to return, it believed that she was terminating her employment.

Prior to her leave of absence, plaintiff reported to defendant Steven P. Worwa, who became president of the bank in February 1989. Plaintiff claims that after Worwa became president, the bank instituted a program of eliminating employees over 40 years of age and replacing them with younger employees. In support of that contention, plaintiff identifies various bank employees over 40 who either resigned or were terminated, for a variety of reasons, after 1989. Plaintiff, however, fails to identify any younger employees who have allegedly replaced those older employees.

Plaintiff further contends that the bank created a hostile working environment for older employees, and that she suffered mental anguish and depression as a result.[3] She claims that her depression caused and aggravated her physical ailments.

Based on the foregoing, plaintiff asserts age discrimination claims under the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. §§ 621–34, and the Minnesota Human Rights Act ("MHRA"), Minn.Stat. §§ 363.01–.15.

Plaintiff also alleges claims of sex discrimination under the MHRA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., based on her failure to receive severance pay. In support of those

---

**2.** Two months before plaintiff's request, the bank had modified its disability leave policy. Under the prior policy, management determined the length of an officer's disability leave without any specific limit, while other employees were limited to five months of disability leave over a two-year period of time. Under the bank's new policy, all employees, including officers, were subject to the five-month limit.

**3.** In support of her claims, plaintiff first alleges that, other than giving her additional duties, Worwa ignored her for most of 1989. She claims that he should have visited her in her office more frequently. She also objects to the tone of voice that Worwa used when he asked her if she would be willing to handle additional time cards for bank employees.

Plaintiff further contends that she was given an overly critical performance evaluation and was told that she would not get any raise because she was overpaid and at the top of her salary range. She is also upset because she was not offered a health club membership.

In addition, plaintiff claims that Worwa argued with another older employee, William Gowan, a senior vice president and secretary of the bank, about Gowan's performance. Plaintiff further contends that various older employees were told that they were overpaid or not useful. Plaintiff further alleges that an employee was asked to photocopy an article concerning the termination of employees and another employee was told that ten years of banking experience was as good as twenty years, because changes in the banking industry had made the first ten years of experience obsolete.

claims, plaintiff's complaint alleges that the bank:

> Paid or agreed to pay three male bank officers whose employment has been terminated severance pay totalling at least $250,000.

Complaint ¶ 24.  In her deposition testimony, however, plaintiff named only two such officers, Gowan and Marvin Devig, and subsequently conceded that Devig had not received any severance pay.  Plaintiff further conceded that the bank had no policy, either written or unwritten, concerning severance pay and that she failed to request severance pay before threatening to bring the present action.

Plaintiff also brings MHRA claims against Worwa and defendant AFS Financial Corporation ("AFS"), owner of the bank, alleging that they aided and abetted discrimination.

Defendants now move for summary judgment on all of plaintiff's claims.  Defendants contend that all but one of plaintiff's allegations of age discrimination are barred by the relevant statute of limitations.  They contend that her one timely allegation, that the bank failed to provide plaintiff with various bank memoranda during her leave of absence, does not constitute an adverse employment action for purposes of her age discrimination claims.  They further contend that plaintiff fails to proffer any evidence that the bank's failure to provide such information was related to either her age or sex.

Defendants also seek summary judgment on plaintiff's sex discrimination claims, arguing that the claims are fatally flawed based on her concession that the bank's failure to pay her any severance pay was unrelated to her sex.  It is also undisputed that at least two other male bank officers, Chris Odden and Dave Anderson, terminated their employment but received no severance or settlement payments from the bank.

Defendants finally seek summary judgment on plaintiff's aiding and abetting claims, arguing that plaintiff proffers no evidence to support those claims.[4]

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which requires the trial judge to direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.* at 248.  In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986);  Fed.R.Civ.P. 56(c).  A fact is material only when its resolution affects the outcome of the case.  *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.  On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party.  *Id.* at 250, 106 S.Ct. at 2511.  The nonmoving party, however, may not rest on mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.  Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all

---

4.  Defendants also argued that the court should disregard plaintiff's memorandum in opposition because it was untimely.  At the hearing, the court determined that it would nonetheless consider plaintiff's memorandum.

other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court will consider defendants' motion for summary judgment.

### 1. *Plaintiff's Age Discrimination Claims*

Plaintiff filed a charge of age and sex discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 2, 1991. Under the ADEA, a plaintiff is required to file a charge with the EEOC "within 300 days after the alleged unlawful practice occurred." 29 U.S.C. § 626(d)(2). Thus, plaintiff's age discrimination claim is barred to the extent that is premised on acts which occurred 300 days before the filing of her charge, that is, before October 4, 1990. Under MHRA, a plaintiff must file a charge "within one year after the occurrence of the practice." Minn.Stat. § 363.06, subd. 3. As a result, any of plaintiff's MHRA claims arising from acts of alleged discrimination occurring before August 2, 1991, are barred by the one-year statute of limitations.

■ Plaintiff began her leave of absence on May 21, 1990. To support her age discrimination claims, she alleges only one discriminatory act occurring after that time, that the bank failed to send her various internal memoranda. All of the other acts on which plaintiff relies occurred before she began her leave, and more than one year before plaintiff filed her charge with the EEOC. Plaintiff nonetheless argues that her age discrimination claims are timely because she did not fully experience the physical or emotional effects of the

challenged acts until much later, and thus the limitation periods did not began to run until she fully felt such effects.[5]

■ The court rejects plaintiff's contention. In determining when a statute of limitations begins to run, "the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir.1979) (Title VII case)); *Turner v. IDS Financial Servs.*, 471 N.W.2d 105, 108 (Minn.1991) (construing the MHRA limitations period using the same standard). In the present case, plaintiff proffers no evidence that any discriminatory acts occurred after she began her leave of absence. It is undisputed that plaintiff received leave time in accordance with bank policy in effect at the time of her request and plaintiff makes no allegations of discrimination concerning the calculation of her leave. Moreover, although the bank wanted plaintiff to return to work after her leave ended, she failed to do so because of her health and proffers no evidence that her failure to return involves some discriminatory act.[6] As discussed more fully *infra*, the only act of alleged discrimination occurring after plaintiff began her leave, that the bank failed to send her various internal memoranda, is insufficient to raise any inference of age discrimination. Based on the foregoing, the court determines that the statute of limitations under both the ADEA and the MHRA began to run no later than May 21, 1990, the

---

**5.** That contention, however, conflicts with plaintiff's concession that she felt the physical and emotional effects of the alleged discrimination as early as January 1990, when she began working part-time, and again in May 1990, when she began her leave of absence.

**6.** Plaintiff's brief in opposition to defendants' motion alleges that she was fired in May, 1991, at the end of her leave, "because she was unable to return to work due to her condition." Plaintiff, however, fails to proffer any evidence to support the allegation that she was fired, and defendants proffer evidence showing that the bank wanted her to continue her employment at

the end of her leave. The court thus rejects plaintiff's claim that she was fired in May, 1991.

By making this claim, plaintiff may be seeking to argue that she was constructively discharged because her illness was allegedly caused by her working conditions and prevented her return to work. The court also rejects this argument, finding that defendants' actions were not such that "a reasonable person would find conditions intolerable" and were not "taken with the intention of forcing [plaintiff] to quit." *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981) (defining constructive discharge).

commencement of plaintiff's leave.[7]

Plaintiff also argues that the emotional and physical effects of the alleged discrimination did not result in a loss of income or benefits until May 1991, and thus the statutes of limitations began to run at that time. Plaintiff, however, fails to cite any authority to support her position. For the reasons previously set forth, the court similarly rejects her claim that the limitations period does not begin to run until she felt the financial effects on the alleged discrimination. *Cf. Moylan v. Maries County,* 792 F.2d 746, 750 n. 1 (8th Cir.1986) (plaintiff may assert hostile environment claim without alleging the loss of any tangible job benefits).

Based on the foregoing, the court concludes that any acts of alleged age discrimination occurring prior to the commencement of plaintiff's leave are untimely under the ADEA and the MHRA. Specifically, all of the alleged acts, other than plaintiff's failure to receive bank memoranda, are time barred. The court thus grants defendants' motion for summary judgment on plaintiff's age discrimination claims to the extent that the claims are based on any acts occurring before plaintiff began her leave of absence on May 21, 1990.

■ Plaintiff alleges only one act of age discrimination occurring within the relevant limitations period, specifically that:

> during her leave of absence, [the bank] refused to send her employee information.

Complaint ¶ 20. Approximately two months after she began her leave, plaintiff asked the bank to send her copies of all the bank's memoranda to staff, newsletters and other information going back to the time when she left the bank. Marlene Daniels, Vice President of Marketing and Human Resources, responded to plaintiff's request, explaining that it would be too difficult to do so. As Daniels stated in her affidavit, the bank had several concerns about sending copies of all bank memoranda to employees who were not actually in the work place. First, the bank had no policy of sending such information to employees who were either out on leave or absent for other reasons. She further noted that it would be difficult to ensure that absent employees would receive copies of every communication sent to bank personnel. Moreover, internal bank correspondence and memoranda would often contain confidential or proprietary information and it would be impossible to ensure the confidentiality of documents sent outside the bank. Daniels thus declined to send all such materials to plaintiff. Despite her reservations, however, Daniels did send plaintiff copies of the bank's most recent newsletter and the August 1, 1990, revisions to its employee handbook. She subsequently sent plaintiff copies of job postings and later newsletters. Plaintiff nonetheless contends that the bank's failure to comply with her request for such information is evidence of age discrimination.

■ The court is to analyze such allegations under the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *see Halsell v. Kimberly–Clark,* 683 F.2d 285, 289–90 (8th Cir. 1982) (applying analysis to ADEA claim), *cert. denied,* 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983); *Albertson v. FMC Corp.,* 437 N.W.2d 113, 115 (Minn.Ct.App. 1989) (citing *Sigurdson v. Isanti County,* 386 N.W.2d 715, 719–20 (Minn.1986) and applying *McDonnell Douglas* framework to analyze MHRA claim). Under *McDonnell Douglas,* a plaintiff must first establish a prima facie case of discrimination. *Clements v. General Accident Ins. Co.,* 821 F.2d 489, 491 (8th Cir.1987); *Albertson,* 437 N.W.2d at 115. Although the requirements vary according to individual circumstances, to establish a prima facie case a plaintiff is generally required to show:

(1) that she was a member of the protected class;

---

**7.** Although the ADEA and MHRA limitation periods may be tolled under various other circumstances, plaintiff fails to proffer any evidence to justify such tolling. *See, e.g., Glass v. IDS Financial Servs.,* 778 F.Supp. 1029, 1046–48, 1052–55 (D.Minn.1991) (discussing under what circumstances the ADEA statute of limitations may be tolled).

(2) that she was performing her job well enough to rule out the possibility that she suffered adverse employment consequences as a result of inadequate job performance;

(3) that the employer took some type of adverse employment action; and

(4) that the employer did not take such action against nonmembers of the protected class.

See, e.g., Clements, 821 F.2d at 491; Spear v. Dayton's, 771 F.2d 1140, 1143 (8th Cir. 1985); Sigurdson, 386 N.W.2d at 720.

■ If a plaintiff successfully demonstrates a prima facie case, the burden then shifts to employer to articulate a nondiscriminatory reason for its employment decision. If the employer meets that burden, the plaintiff must come forward with evidence showing that the employer's proffered reason is merely a pretext for discrimination. See McDonnell Douglas, 411 U.S. at 802–04, 93 S.Ct. at 1824–25; Clements, 821 F.2d at 491; Albertson, 437 N.W.2d at 115–16.

Applying that framework, the court first determines that plaintiff fails to establish a prima facie case of age discrimination. In order to support a claim of age discrimination, a plaintiff must demonstrate an adverse employment action. See 29 U.S.C. § 623(a) (ADEA); Minn.Stat. § 363.03, subd. 1(2) (MHRA). After taking leave, plaintiff was able to call either Daniels or Worwa to find out what was happening at the bank. Because she was free to obtain the same information contained in any memoranda by calling the bank, the court concludes that the bank's decision not to send plaintiff copies of every piece of internal correspondence while she was on leave does not constitute an adverse employment action for purposes of the ADEA or the MHRA, and thus plaintiff fails to demonstrate that element of a prima facie case.

The court further concludes that plaintiff fails to show that the bank sent the requested information to nonmembers of the protected class. A causal connection between an employer's action and an individual's protected class status is usually established by showing that the plaintiff had been treated differently than other employees who fall outside the protected class. In the present case, however, plaintiff fails to identify any employee, of any age, who was treated differently than she was and fails to proffer any evidence indicating that the bank's refusal to send her all of the requested information was influenced by her age. Moreover, the bank sent plaintiff some of the materials she requested, and the only evidence concerning the bank's motivation for its failure to send the rest of the material indicates that its refusal was prompted by legitimate business concerns. Accordingly, the court concludes that plaintiff fails to show that defendants treated her differently than nonmembers of the protected class.

Plaintiff also presents no evidence that the bank's justification for its refusal, specifically Daniels' explanation, is a pretext for age discrimination. Thus, even if plaintiff were to carry her burden of demonstrating a prima facie case, she fails to raise a material fact dispute concerning defendants' pretext, and thus defendants are entitled to summary judgment concerning that allegation. See Goetz v. Farm Credit Servs., 927 F.2d 398, 406 (8th Cir. 1991) (although plaintiff demonstrates prima facie case, court should grant summary judgment if plaintiff fails to raise material fact dispute concerning whether defendant's proffered justification was pretextual); Rademacher v. FMC Corp., 431 N.W.2d 879, 882 (Minn.Ct.App.1988).

Based on the foregoing, plaintiff fails to establish a prima facie case of age discrimination, or that defendants' explanation was pretextual, and thus her age discrimination claim based on her failure to receive internal bank correspondence fails as a matter of law. Accordingly, the court grants defendants' motion for summary judgment to the extent it is based on plaintiff's failure to receive such memoranda.

In summary, the court concludes that plaintiff's age discrimination claim fails because all of plaintiff's allegations of age discrimination, other than her allegation that she failed to receive some memoranda,

are barred by the applicable statutes of limitations. Her remaining claim is fatally flawed because the bank's refusal does not constitute an adverse employment action, plaintiff was treated no differently than nonmembers of the protected class and plaintiff fails to raise a material fact dispute concerning defendants' alleged pretext. Accordingly, the court grants defendants' motion for summary judgment on plaintiff's age discrimination claims under the ADEA and the MHRA.

## 2. *Plaintiff's Claim of Sex Discrimination*

■ Plaintiff also asserts claims of sex discrimination under Title VII and the MHRA as a result of the bank's failure to pay her severance pay. Plaintiff's complaint alleges that the bank agreed to pay three male bank officers whose employment had been terminated severance pay of at least $250,000. In her deposition, however, plaintiff identified only such two officers, Gowan and Devig, and further conceded that Devig received no severance pay but was retained as a consultant for one year after his employment terminated. Thus, plaintiff's claim of sex discrimination is based solely on the fact that one male employee, Gowan, received severance payments while she did not.

To support a claim of sex discrimination, a plaintiff must show that she suffered an adverse employment action because of her sex. *See* 42 U.S.C. § 2000e–2(a)(1); Minn. Stat. § 363.03, subd. 1(2). The court is to analyze such claims under the framework set forth in *McDonnell–Douglas. See Crutchfield v. Maverick Tube Corp.,* 854 F.2d 307, 308–09 (8th Cir.1988) (Title VII); *Sigurdson,* 386 N.W.2d at 719–20 (MHRA). Plaintiff's failure to receive severance payments does not constitute an adverse employment action unless such payments were a benefit normally offered to bank employees. *See, e.g., Sigurdson,* 386 N.W.2d at 720 (MHRA). In the present case, however, it is undisputed that the bank had no written or unwritten policy of providing severance pay to any employee, and the bank's decision to provide severance pay to one employee is insufficient to create such a policy. It is also undisputed that at least two other male bank officers terminated their employment with the bank but failed to receive any severance or settlement payments. Plaintiff further concedes that the bank's decision was not related to her sex. The court thus concludes that plaintiff fails to establish a prima facie case because she is unable to show that she was subjected to any adverse employment action or that the bank treated her differently than nonmembers of the protected class.

Moreover, even if the court were to determine that the severance payments to Gowan constitute a bank practice, the court concludes that plaintiff would not be entitled to such payments because her situation is clearly distinguishable from the circumstances surrounding Gowan's termination.[8] The bank sought Gowan's termination while he was still an active employee. Thus, the bank paid him in exchange for his agreement to end his employment, execute a general release and perform certain other things.[9] In contrast, although plaintiff was unable to work at the end of her leave, the bank was nonetheless willing to have her return to work if she had been willing or able to do so. The bank thus had no reason to pay her in exchange for an agreement to leave. The court therefore concludes that even if the bank's payments to Gowan were to constitute a bank policy, plaintiff would be not entitled to such payment because her situation was distinguishable.

Based on the foregoing, the court concludes that plaintiff's sex discrimination

---

**8.** If Gowan's payments are to be deemed a policy that should be applied to all employees, then the facts of Gowan's case may be analyzed to set the eligibility requirements of that policy. *See, e.g., Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988) (courts analyzing employment discrimination claims do "not sit as a super-personnel department that re-examines an entity's business decision" (quotation omitted)).

**9.** The circumstances surrounding Gowan's departure from the bank are confidential and the materials describing those circumstances were filed under a protective order.

claims under MHRA and Title VII are fatally flawed because she fails to demonstrate an adverse employment action or that she was treated differently than non-members of the protected class. The court thus grants defendants' motion for summary on plaintiff's sex discrimination claims.

### 3. *Plaintiff's Aiding and Abetting Claims*

Plaintiff asserted a claim of aiding and abetting discrimination under the MHRA against AFS. *See* Minn.Stat. § 363.03, subd. 6. In her memorandum in opposition to defendants' motion, however, plaintiff conceded that her aiding and abetting claim against AFS is meritless, and should be dismissed. (Pl.'s Mem.Opp.Summ.J.Mot. at 13.) Accordingly, the court will dismiss that claim.

Plaintiff also asserts an aiding and abetting claim against Worwa. As previously determined, however, all of plaintiff's MHRA claims are either barred by the statute of limitations or fatally flawed because they fail to establish a prima facie case of either sex or age discrimination. As a result, the court concludes that there is no actionable discrimination to aid or abet, and thus Worwa is entitled to summary judgment.

Based on the foregoing, the court concludes that defendants' motion for summary judgment on plaintiff's aiding and abetting claim pursuant to MHRA should be granted.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment on plaintiff's age discrimination claims pursuant to the ADEA and MHRA is granted;

2. Defendants' motion for summary judgment on plaintiff's sex discrimination claims under Title VII and MHRA is granted; and

3. Defendants' motion for summary judgment on plaintiff's aiding and abetting claims against AFS and Worwa under the MHRA is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.