869 F.Supp. 736 (1994)
Michael AUCUTT, Plaintiff,
v.
SIX FLAGS OVER MID-AMERICA, INC., Defendant.
No. 4:93CV2097SNL.
United States District Court, E.D. Missouri, Eastern Division.
December 6, 1994.
*737 Paul E. Ground, Quinn and Ground, Manchester, MO, for plaintiff.
Peter H. Harris, Associate, Paula Luepke, and Connie J. Schroeder, Bryan Cave, St. Louis, MO, for defendant.

*738 MEMORANDUM

LIMBAUGH, District Judge.
Plaintiff has filed suit alleging that he was terminated from his employment, as the result of a reduction-in-force management decision, on the basis of age and a disability in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. and the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. Plaintiff specifically alleges that he was selected for lay-off in October 1992 because he was 44 years old and had high blood pressure and a heart condition. This matter is before the Court on the defendant's motion for summary judgment (# 11), filed October 5, 1994. Responsive pleadings have been filed. This cause of action is set for trial on the Court's trial docket of December 5, 1994.
Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir.1988).
Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.
Plaintiff was hired by defendant Six Flags at the Six Flags theme park in Eureka, Missouri in April 1990. He was approximately 42 years old at the time he was hired. He began his employment as a seasonal officer, but quickly became a full-time uniform security officer. Prior to becoming employed at Six Flags, plaintiff had spent the majority of his adult life (from 1967 to 1990, with a six year break) in the Armed Forces. He had retired from the military as a Staff Sergeant when he began his employment with Six Flags. As a full-time uniform security officer, plaintiffs responsibilities were to enforce park rules and regulations in order to ensure the safety and security of guests, employees, and vehicles. His duties included building checks, water systems checks, patrolling the parking lots, in-park patrol, and gate duty. Inherent with his job was daily contact with employees and guests of the park.
In July 1991 plaintiff became ill while at work. After receiving medical attention at the park, plaintiff was transported to St. John's Hospital in Washington, Missouri. He was treated for high blood pressure and released several days later.[1] Plaintiff returned *739 to work two to three weeks later. He submitted a doctor's statement releasing him for work. The only limitation contained in the doctor's statement was a 25 lb. lifting restriction. Plaintiff did not inform Chilovich or other park personnel of any additional limitations or restrictions upon plaintiff's activities, especially with regard to his job. In March or April of 1992, plaintiff experienced chest pains while completing, with others from the Security Department, a "streams course" in Greensfelder Park. Although plaintiff has reservations about the course, he was told it was mandatory, and so he participated in the exercise. Plaintiff's Affidavit. Upon experiencing the chest pains, plaintiff took nitroglycerin tablets for relief and reported to First Aid. The last time plaintiff became ill at work was in the late summer of 1992. His supervisor contacted First Aid, and then plaintiff was sent home.
At the end of the 1992 season, Six Flags' General Manager[2] William Haviluk reviewed the park's workforce and decided to implement an across-the-board reduction in personnel which affected several of the park's departments. He directed Mike Chilovich, Manager of Security, to restructure the Security Department with the goal of reducing manpower. Chilovich Affidavit. At this time, there were six (6) uniform security officers. After reviewing his department's workload, needs, and skill requirements, Chilovich consulted with Haviluk, and they decided that three (3) security positions (two sergeants and one uniform officer) would be eliminated as a part of the restructuring. Chilovich Affidavit.
Chilovich evaluated the persons in these job classifications according to their productiveness, attitude, and job skill. Chilovich Affidavit. In reviewing the uniform security officers, Chilivich concluded that plaintiff ranked the lowest in terms of attitude, work style, and productiveness. Chilovich Affidavit. Plaintiff's job performance evaluations consistently ranked him as performing the tasks of his position satisfactorily; however, he was repeatedly counseled regarding his "militaristic" manner in dealing with the public and his negative attitude towards management. Chilovich Affidavit; Defendant's Exhibits C and D. In February 1992, plaintiff had been suspended for refusing to attend a mandatory staff meeting. He was counseled about his refusal to attend the meeting as well as his continued negative work attitude and not being "guest-friendly". He was specifically told by Chilovich to improve his attitude, comply with company policies and philosophies, and to become a "team player" or risk losing his job. Defendant's Exhibit E.
Chilovich recommended plaintiff for lay-off in October 1992 and Haviluk concurred. At the time of his lay-off, plaintiff was approximately 45 years old and the oldest uniform security officer. Eight months after his lay-off, following the termination of another uniform security officer, a long-term employee of defendant's was transferred into the Security Department as a uniform security officer. This person was younger than 40 years old at the time of the transfer.
Plaintiff contends that he was selected for lay-off due to his age and disability. Defendant argues that plaintiff was selected for lay-off solely because he continued to demonstrate a negative attitude towards management and refused to alter his "militaristic" approach to dealing with guests of the park.

ADEA
An age discrimination case may proceed to trial in one of two ways: one way involves the use of direct evidence of age discrimination; the other way utilizes indirect methods of proof of age discrimination. Williams v. Valentec Kisco, Inc., 964 F.2d 723 (8th Cir.1992); Beshears v. Asbill, 930 F.2d 1348, 1353 (8th Cir.1991); Blake v. J.C. Penney, 894 F.2d 274, 278 (8th Cir.1990). When a plaintiff produces direct evidence, such as statements by decisionmakers clearly showing that age was a motivating factor in the employment decision; or at least significant circumstantial evidence showing a specific link between the discriminatory animus *740 and the challenged employment decision, the burden-shifting standards established by Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), come into play. Stacks v. Southwestern Bell Yellow Pages, 996 F.2d 200, 201 n. 1 (8th Cir. 1993); Beshears, at 1353. In the absence of such evidence, the guidelines set forth in McDonnell Douglas v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) are applicable. Johnson v. Minnesota Historical Society, 931 F.2d 1239, 1242-43 (8th Cir. 1991); Halsell v. Kimberly-Clark, 683 F.2d 285, 289 (8th Cir.1982), citing, Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981), cert. den., 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983).
In the instant case, the plaintiff has provided the Court with no direct evidence of age discrimination. He has offered no statements by anyone directly involved in the decision to terminate his employment which could be reasonably construed as delineating age as the motivating factor for the decision. He has presented the Court with no documentation that directly evidences age as the motivating factor behind the decision to terminate his employment. He has failed to produce any circumstantial evidence which specifically links consideration of his age to his selection for lay-off. Plaintiff's only "factual" basis for his allegation of age discrimination is that he was the oldest of six uniform security officers when selected for layoff. Plaintiff's Deposition, pgs. 104-05.
Since plaintiff has no direct evidence or evidence that directly reflects the use of age as the motivating criteria in the challenged decision, he must first establish a prima facie case in order to proceed to trial. Stacks, at 202. Under the ADEA, a prima facie case requires the plaintiff to show that he was a member of the protected class (between the ages of 40 and 65); that he was subjected to an adverse employment action; that he was qualified for a particular position or job, or was performing adequately in his job; and that he was replaced by a person not a member of the protected class. Gaworski v. I.T.T. Commercial Finance Corp., 17 F.3d 1104, 1109 (8th Cir.1994); LaPointe v. United Autoworkers Local 600, 782 F.Supp. 347, 349 (E.D.Mich.1992), reversed and remanded on other grounds, 8 F.3d 376 (6th Cir.1993); Kehoe v. Anheuser-Busch Co., 995 F.2d 117, 119 (8th Cir.1993); Crady v. Liberty National Bank and Trust Co., 993 F.2d 132, 134 (7th Cir.1993); Lowe v. J.B. Hunt Transport, Inc., 963 F.2d 173, 174 (8th Cir.1992).
The Eighth Circuit Court of Appeals has recently modified the last requirement that the plaintiff be replaced by someone outside the protected class, especially in reduction-of-force cases. The plaintiff must either show that the employer assigned a non-member of the protected class to do the same work or make "some additional showing" that age played a "determining" role in the discharge. Kehoe, at 119, citing Holley v. Sanyo Manufacturing, Inc., 771 F.2d 1161, 1165-66 (8th Cir.1985); Glover v. McDonnell Douglas, 981 F.2d 388, 393 (8th Cir.1992); Hall v. American Bakeries Co., 873 F.2d 1133, 1135 (8th Cir.1989). If the plaintiff fails "to establish a factual dispute on each element of the prima facie case, summary judgment is appropriate." Weber v. American Express, 994 F.2d 513, 515-16 (8th Cir. 1993).
After carefully reviewing the record before the Court, the Court finds that the plaintiff has failed to establish a prima facie case of age discrimination in the decision to select him as one of three persons for lay-off in the Security Department.
Defendant contends that plaintiff has failed to establish a prima facie case of age discrimination because at the time of his lay-off plaintiff's job performance was not meeting defendant's legitimate expectations; and that he was not replaced by a younger person and/or has failed to produce evidence suggesting that age was a determining factor in the lay-off decision. Plaintiff counters that his job performance evaluations show that he was meeting defendant's expectations, that the officers retained were younger and had "inferior" job performance evaluations, and that subsequent to his termination a younger person was hired to fill his position.
*741 The defendant's premier philosophy is to treat park guests with courtesy and friendliness, while taking all steps necessary to provide a safe and secure environment, so that guests would return in the future. The personnel of the Security Department were to carry out their duties so as to ensure the safety and security of guests and their property while enjoying themselves at the park. The plaintiff's job performance evaluations of May 28, 1991 and November 28, 1991 undeniably show that the plaintiff carried out his duties in a manner which met the defendant's expectations. However, these evaluations consistently show that although plaintiff performed his duties adequately, he failed to demonstrate the necessary "people skills" required of his job. He approached his job with a "militaristic" attitude that was viewed offensive and contrary to the park's philosophy. In his May 28th evaluation, Chilovich noted that plaintiff was a "by the book man" who had difficulty in being flexible in department and company policy matters. "Mike sometimes applies his military attitude style of communication which sometimes (next word illegible) off in how he handles situations. He becomes very vocal in expressing his likes and dislikes of certain policies and how they are enforced." Chilovich determined that plaintiff needed to become more flexible in his attitude towards company policy and department procedures while still carrying out security practices; and that he needed to "separate his military idealism from the Six Flags environment". Chilovich concludes that "Mike overall has done an excellent job as an officer, its his swing in attitude from a military background to the amusement park setting that sometimes causes conflicts under certain situations." Plaintiff signed his evaluation agreeing to improve his attitude and work on separating his prior military experience from his present job attitude. Plaintiff received a grade promotion from Security Officer II to Security Officer III.
Six months later, his immediate supervisor John Rodden rated plaintiff as meeting the defendant's expectations; however, he too cited a continuing problem with the plaintiff's "militaristic" approach to handling security situations. Rodden states that plaintiff continues to view security situations only in terms of "black and white" and "sees no grayness". Rodden determines that plaintiff still needs to work on his attitude towards guests in the park, as well as on the parking lot. Plaintiff concurred with Rodden's evaluation regarding his attitude and again agreed to work on it.
In February 1992, plaintiff received a reprimand and was suspended for failing to attend a mandatory staff meeting. Not only did plaintiff fail to attend the meeting, but he had been heard making negative comments about department policy and procedures. Chilovich noted that plaintiff had been counselled several times in the past about his negativism and failure to be "guest-friendly".
A review of the other officers' job performance evaluations, during the relevant time-period, show that plaintiff did not in fact receive evaluations superior to them. The two younger "inferior" employees (Vicki Holtz and Jourdan Morgan) only ranked lower than plaintiff in one rating category. Furthermore, there is no evidence before this Court which shows that defendant had any misgivings about these two employees' attitude towards department and company policy/procedures or was concerned about the way they interacted with park guests. Finally, there is no evidence before the Court which indicates that either one of these employees ever received a corrective action report or had been suspended as did plaintiff.
As for as being "replaced" by a younger person lacking security experience, the evidence before the Court suggests a different story. Plaintiff has submitted the resume of James J. Ruszala as his "replacement". Mr. Ruszala's resume indicates that he has been an employee of the defendant since 1987. He has held a supervisory position since 1989 in the Park Service Department. At the time he applied for a position in the Security Department, Ruszala was finishing up his undergraduate degree in Criminal Justice at the University of Missouri  St. Louis. Plaintiff claims that Ruszala was not qualified for a security officer position due to lack of prior experience; however, plaintiff has failed to submit any evidence that when he *742 was initially hired as a security officer he had prior security experience. In his deposition, plaintiff testified that during his six (6) year break in military service he worked in retail and grocery stores, and at the time of his retirement from the military he was an "analyst". Plaintiff's Deposition, pgs. 11 and 13. Finally, defendant contends and the plaintiff has not produced any evidence to the contrary, that Ruszala was transferred eight (8) months after the lay-off to fill in a subsequent opened slot. Thus, Ruszala did not "replace" the plaintiff, he instead replaced another employee who left after the plaintiff's lay-off, thereby resuming the status quo.
Plaintiff has failed to establish a prima facie case, with any credible evidence, that age was a factor at all, much less a "determining factor" in the decision to select him for lay-off. Plaintiff has not offered one piece of evidence, other than he was the oldest uniform security officer at the time of his lay-off, to support his allegation of age discrimination. He has not offered any affirmative evidence to show that the criticisms noted on his job performance evaluations were inaccurate (in fact, he agreed with them) or that the other officers had been criticized or reprimanded as he had been. He has not offered any evidence to rebut the fact that Ruszala was hired to replace someone who had left eight months after plaintiff was laid-off, thereby maintaining the status quo achieved by the lay-off. Finally, the fact that plaintiff was hired at approximately age 42 and laid-off only two and one-half (2 ½) years later at approximately age 45, is weak evidence of an age-based animus. Lowe v. J.B. Hunt Transport, Inc., 963 F.2d 173, 174-75 (8th Cir.1992); see also, LeBlanc v. Great American Ins. Co., 6 F.3d 836, 847 (1st Cir.1993); Johnson v. Group Health Plan, Inc., 994 F.2d 543, 548 (8th Cir.1993). As the Eighth Circuit Court of Appeals notes (in agreeing with the Sixth Circuit Court of Appeals), "[t]he mere termination of a competent employee when an employer is making cutbacks due to economic necessity is insufficient to establish a prima facie case of age discrimination ..." Holley, at 1166 quoting LaGrant v. Gulf & Western Manufacturing Co., Inc., 748 F.2d 1087, 1090-91 (6th Cir. 1984).
Even if this Court were to assume that the plaintiff has established a prima facie case of age discrimination, he has failed to sufficiently rebut the defendant's articulated nondiscriminatory reasons for discharge.
Defendant contends that plaintiff was chosen for lay-off because his negative attitude regarding department/company policies and procedures, and his "militaristic" approach in dealing with park patrons did not improve despite numerous counselings and a reprimand in February 1992. Plaintiff does not deny that defendant had a "legitimate" business concern regarding how its security officers viewed the defendant's philosophy and policies, and how this attitude affected their treatment of park patrons. He does not deny that the criticisms contained in his job performance evaluations were accurate (in fact he concurred with them and agreed to work on changing his attitude). Although he questions Chilovich's "personal" knowledge of incidents involving plaintiff making park patrons do "push-ups" in the parking lot as a disciplinary action, or conducting unauthorized vehicle searches of patrons he suspects of possessing contraband, he does not deny or offer any evidence that these activities took place.
Plaintiff cites Clements v. General Accident Ins. Co., 821 F.2d 489 (8th Cir.1987) for the proposition that all plaintiff has to do is allege that defendant's reasons are pretextual and that it is for a jury to decide if in fact they are pretextual. Plaintiff is mistaken in his analysis of the current state of the law. In St. Mary's Honor Center v. Hicks, ___ U.S. ___, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court clearly found that the burden of persuasion remains with a plaintiff in an employment discrimination case, and that the plaintiff must produce evidence which not only shows that the reasons are pretextual but also that the adverse employment decision was motivated by an illegitimate criterion (in this case, age). Hicks, ___ U.S. at ___ - ___, 113 S.Ct. at 2751-52. This burden exists in a summary judgment review; i.e. plaintiff must produce evidence that supports an inference that defendant's *743 decision was intentional discrimination based upon an illegal motivation (age). See, Banks v. City of Independence, 21 F.3d 809, 810 (8th Cir.1994). In other words, plaintiff must produce evidence which establishes the existence of a genuine issue of material fact with respect to any discriminatory intent on the part of Six Flags. This he has not done.
This Court is obliged not to second-guess the defendant's personnel decisions, unless such decisions are discriminatorily based. "There is no principle of law that requires that a business' decision be popular with employees. As long as the decision is not based on unlawful age discrimination, `the courts have no business telling [companies] ... how to make personnel decisions, which may be objectively or subjectively based.'" Walker v. AT & T Technologies, 995 F.2d 846, 850 (8th Cir.1993). Aucutt's evidence, which the Court has previously outlined above, makes no showing that defendant's articulated reasons for her lay-off were pretextual or that age actually motivated the defendant's decision. Hazen Paper Co. v. Biggins, ___ U.S. ___, ___, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993); see also, St. Mary's Honor Center v. Hicks, ___ U.S. ___, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

ADA
Defendant contends that plaintiff cannot establish a prima facie case of disability discrimination because he cannot show that he was meeting defendant's legitimate expectations regarding his job performance or that he was replaced. Defendant further contends that plaintiff cannot provide additional evidence that his "handicap" was a determining factor in the decision to select him for lay-off. Plaintiff counters that he does not have to show he was replaced in order to establish a prima facie case of disability discrimination, that his job performance evaluations show that he was performing his job satisfactorily, and that he has direct evidence, i.e. statements by supervisory personnel, that he was being considered for termination due to his medical problems.
Although the plaintiff apparently disagrees with the prima facie standard advanced by the defendant, he fails to offer any caselaw to support a different standard. Although the caselaw is scant regarding the American with Disabilities Act, especially within the Eighth Circuit, a few courts have addressed claims brought pursuant to the Act and have reasoned that Title VII and the Rehabilitation Act provide guidance as to the elements which constitute a prima facie case of disability discrimination. In order to make out a prima facie case of disability discrimination, the plaintiff must show the following: 1) plaintiff was "disabled" as defined by the ADA; 2) plaintiff was qualified, with or without accommodation to do the job; 3) plaintiff was subject to an adverse employment decision; and 4) plaintiff was replaced by a non-disabled person. Schartle v. Motorola, Inc., 1994 WL 323281, 1994 U.S.Dist. LEXIS 6241 (N.D.Ill.1994); Sherman v. Optical Imaging Systems, Inc., 843 F.Supp. 1168, 1181 (E.D.Mich.1994). Since this is a reduction-in-force case, the Court believes that the fourth element may be properly modified to require that the plaintiff make an additional showing that his disability was a determining factor in the decision to choose him for lay-off.
The parties expend considerable time arguing about the significance of three (3) pieces of "evidence" that the plaintiff offers to support his prima facie case of disability discrimination: 1) statements allegedly made to the plaintiff, upon his return from work after his first medical incident, by two management personnel outside of the plaintiff's department and totally uninvolved with the lay-off decision and fourteen months prior to the lay-off; 2) his "forced" participation in a streams course (physical endurance test); and 3) defendant's alleged failure to provide him with an air-conditioned car to make his rounds. The Court, though, believes that the parties have put the cart before the horse because the plaintiff has failed to present any evidence that he is disabled.
The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and *744 other terms, conditions, and privileges of employment." 42 U.S.C. § 12111(a). The ADA defines "a qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA further defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(2). Although the ADA does not specifically define "major life activities", a definition is provided in the regulations of the Equal Employment Opportunity Commission issued to implement Title 1 of the ADA, 29 C.F.R. Pt. 1630. See, 42 U.S.C. § 12116; Bolton v. Scrivner, 36 F.3d 939 (10th Cir. 1994). The ADA regulations adopt the definition of "major life activities" as provided in the Rehabilitation Act regulations, 34 C.F.R. 104. See, 29 C.F.R. Pt. 1630, Appendix to Part 1630  Interpretive Guidance on Title I of the Americans with Disabilities Act, 1630.2(i) Major Life Activities. Bolton v. Scrivner, supra. The term, as defined in the regulations, "means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1630.2(i). Although "working" is listed as a major life activity, this does not refer to working at a particular job, or at a job of one's choice. Bolton v. Scrivner, 836 F.Supp. 783, 788 n. 3 (W.D.Okla.1993) quoting Welsh v. City of Tulsa, 977 F.2d 1415, 1417 (10th Cir.1992). Furthermore, the regulations specify that "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. 1630.2(j)(3)(i); Bolton v. Scrivner, supra. Finally, the ADA regulations set forth six (6) factors to consider when determining whether an impairment substantially limits a major life activity. The first three (3) factors "should be considered", while the three (3) additional factors "may be considered". 29 C.F.R. 1630.2(j)(2) and (j)(3)(ii). These factors are as follows: 1) the nature and severity of the impairment; 2) the duration or expected duration of the impairment; and 3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment; 4) the geographical area to which the individual has reasonable access; 5) the job from which the individual has been disqualified as well as other types of jobs and the number of jobs from which the impaired individual is disqualified; and 6) the impaired individual's job expectations and training.
The simple fact is that the record before this Court is completely devoid of any evidence which demonstrates that Aucutt is a "disabled" person as that term is defined under the ADA and its regulations. Plaintiff has failed to produce a single piece of evidence that his alleged high blood pressure and unspecified angina and coronary artery disease "substantially limits" one or more of the ADA's recognized "major life activities". There are no medical reports substantiating plaintiff's claim as to his alleged medical condition or any objective affirmative evidence that provides this Court with some indication as to exactly how plaintiff is allegedly impaired. The only evidence before the Court is plaintiff's unsubstantiated claim that he suffers from high blood pressure (what constitutes "high" blood pressure is unknown) and an unspecified heart condition; and the defendant's claim that upon his return to work, the only restriction placed upon the plaintiff by his doctor was a 25 lb. lifting restriction. There is absolutely no evidence before this Court which connects plaintiff's alleged disability to any impairment of normal everyday activities or impairment of job-related duties. Without any evidence that Aucutt's alleged "disability" significantly interfered with his life in any way, the Court finds that plaintiff is not "disabled" as defined by the ADA. Thus, plaintiff has failed to carry his burden in establishing a prima facie case of disability discrimination.
Since the plaintiff has failed to establish a prima facie case of age or disability discrimination, the Court determines that the defendant is entitled to judgment as a matter of law.

*745 ORDER

In accordance with the memorandum filed herein this day,
IT IS HEREBY ORDERED that defendant's motion for summary judgment (# 11), filed October 5, 1994 be and is GRANTED. Judgment is entered for defendant and against the plaintiff on the merits of the plaintiff's complaint. This case is hereby DISMISSED and removed from the Court's December 5, 1994 trial docket.
NOTES
[1] The Court's recitation of the "medical facts" concerning the plaintiff are gleemed from the plaintiff's affidavit. There are no medical records or medical testimony submitted for the record.
[2] All references to the defendant and/or defendant's personnel are specific to the theme park in Eureka, Missouri.